**Joseph DeSOUTO, Plaintiff,**

v.

**Marianne COOKE, James Nagle, Steve Beck, Ben Barber, and Steve Hafermann, Defendants.**

**No. 89–C–1356.**

United States District Court, E.D. Wisconsin.

Nov. 20, 1990.

Joseph DeSouto, Fox Lake, Wis., pro se.

Donald J. Hanaway, Atty. Gen., by JoAnne Kloppenburg, Asst. Atty. Gen., Madison, Wis., for defendants.

## DECISION AND ORDER

MYRON L. GORDON, Senior District Judge.

On October 30, 1989, Joseph DeSouto, currently incarcerated at Fox Lake Correctional Institution, filed this *pro se* action seeking redress under 42 U.S.C. § 1983. The court granted Mr. DeSouto's request to proceed in forma pauperis, *DeSouto v. Cooke*, 726 F.Supp. 244 (E.D.Wis.1989), and the defendants responded with a motion to dismiss pursuant to Rule 12(b)(6), Federal Rules of Civil Procedure. The court referred the matter to Magistrate Aaron Goodstein for recommendation, under 28 U.S.C. § 636(b)(1)(A). Magistrate Goodstein recommended that the defendants' motion be granted and that the plaintiff's action be dismissed. However, the court returned the matter to Magistrate Goodstein for re-examination in light of the Supreme Court's decision in *Zinermon v. Burch*, —— U.S. ——, 110 S.Ct. 975, 108 L.Ed.2d 100 (1990). Magistrate Goodstein later issued a supplemental recommendation that his original recommendation stand.

Mr. DeSouto timely filed an "objection" to the magistrate's supplemental recommendation, *see* 28 U.S.C. § 636(b)(1)(C). Mr. DeSouto's "objection," however, included no legal support for his position and amounted to little more than a generalized contention that he was unable to understand the magistrate's recommendation. The defendants did not respond to Mr. DeSouto's objection. The court does not share Mr. DeSouto's difficulty in comprehending Magistrate Goodstein's reasoning; however, after an assessment of the applicable law the court concludes that it would

be premature to terminate this action before discovery. This compels the court to deny the defendants' Rule 12(b)(6) motion to dismiss.

■ As is the substantive law that the court will be called upon to apply, the precise nature of the motion now before the court is hazy. Since he filed his complaint, Mr. DeSouto has "filed" numerous letters that, among other things, make additional factual assertions relating to the events underlying his claim. None of these letters resembles a response to the defendants' original Rule 12(b)(6) motion, notwithstanding the fact that *pro se* pleadings are to be liberally construed. Nevertheless, the court simply is unable to deem any of these letters a responsive pleading warranting consideration as such. Furthermore, it is unclear whether these letters were served upon the defendants; none have been accompanied by the requisite certificate of service. Thus, these letters are not "pleadings;" they are "matters" outside the pleadings.

Rule 12(b) provides the following direction for the court in cases such as this where additional "matters" are presented on a Rule 12(b)(6) motion to dismiss:

> [i]f ... matters outside the pleadings are presented to *and not excluded by the court*, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56.

Rule 12(b), Federal Rules of Civil Procedure (emphasis added). In accordance with Rule 12(b), for purposes of ruling on the defendants' Rule 12(b)(6) motion, the court will exclude from its consideration Mr. DeSouto's letters rather than treating this motion as one for summary judgment. The motion will be disposed of as it was intended by the movants and as it has been (twice) by the magistrate (although it appears that the magistrate did not expressly exclude Mr. DeSouto's letters from his consideration)—as a Rule 12(b)(6) motion. While the court recognizes that Mr. DeSouto's letters do provide additional, perhaps relevant, facts, only the factual allegations contained in his complaint will be considered.

■ The complaint, which consists of two claims, names the following Kettle Moraine Correctional Institution (Kettle Moraine) officials and employees as defendants: Marianne A. Cooke, superintendent; James Nagle, security director; Ben Barber, administrative captain; Steve Hafermann, lieutenant; Paul Hewson, sergeant; John Voss, sergeant; Robert Jones, captain; and Michael Gannon, officer. The second claim merely requests leave to proceed in forma pauperis—a request that has already been granted, *see* 726 F.Supp. at 245.

The first claim comprises the factual allegations that the court is called upon to assess on the defendants' Rule 12(b)(6) motion. That is a claim for relief under 42 U.S.C. § 1983 for a constitutional harm that Mr. DeSouto alleges to have suffered while he was incarcerated at Kettle Moraine. The statement of claim states in full:

> Specifically, Mr. James Nagle, Capt. Steve Beck and Lt. Steve Hafermann have committed larceny purloining legal and personal documentation under false pretexts. Taken: diary log (8/87–8/89) consisting of one (1) large envelope (approx. 75 pages) and one (1) manila folder (approx. 18 pages). Letters (copies) to DOC [Department of Corrections] personnel Bablitch and Sullivan, to Senator Gary George (copy to Archbishop Weakland, Milwaukee) and other legal materials that at this time, through careful investigation, will be ascertained as best as I can recollect. Captain Barber's contention is that the legal materials which include the diary information was returned to me. That is false. There is, contained, information that is "damaging" to the DOC. At no time did I divulge the contents of my files—and only two staff individuals (as of 6/89) knew that I was maintaining a diary log. I intended to use the material in legal pursuits, two (2) manuscripts and in a self-help emphasis.

In addition, Mr. DeSouto alleges that he filed an inmate complaint on September 3, 1989, and that an inmate complaint investigator received the complaint and numbered it KM # 712–89; he further alleges that Security Director Nagle and Captain Barber later "nullif[ied]" his inmate complaint (although exactly what that means is unclear).

For purposes of ruling upon the defendants' motion to dismiss for failure to state a claim upon which relief can be granted, the court must determine whether "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Hughes v. Rowe*, 449 U.S. 5, 10, 101 S.Ct. 173, 176, 66 L.Ed.2d 163 (1980). Furthermore, the court is mindful of its obligation to ensure that the claims of Mr. DeSouto, a *pro se* litigant, are given "fair and meaningful consideration." *Caruth v. Pinkney*, 683 F.2d 1044, 1050 (7th Cir.1982) ("trial court has special obligations with respect to a *pro se* litigant"), *cert. denied*, 459 U.S. 1214, 103 S.Ct. 1212, 75 L.Ed.2d 451 (1983). The reality is that the factual allegations in Mr. DeSouto's complaint are disjointed and unclear (and probably incomplete as well, given that Mr. DeSouto has seen the need to supplement those allegations with others contained in his subsequent letters to the court).

The nature of the form civil rights complaint that *pro se* civil rights claimants are constrained (by Local Rule 12) to use may be to blame in part. Doubtlessly well-intentioned, the form (emphasis and capitalization in original) directs those persons as follows:

> State as briefly as possible the *essential facts* of your case. Tell what each defendant did to you that caused you to file this suit against them.... State only the facts. *Do not give any legal theories or arguments, do not cite any cases or statutes. Do not feel you have to use all the space.* USE NO MORE THAN THE SPACE PROVIDED. THE COURT STRONGLY DISAPPROVES OF STATING CLAIMS OUTSIDE THE SPACE PROVIDED.

It seems that more often than not, this instruction is taken by the *pro se* prisoner as an invitation to assert a sketchy claim that, whether legitimate or not, is unlikely to withstand a defendant's predictable motion to dismiss. The warning that "the court" somehow "strongly disapproves" of those who overrun the space provided—and how that disapproval may be manifested is unclear—may result in additional "filings," as in this case, that make the court's task of evaluating the merits of a prisoner's contentions even more difficult.

Furthermore, although the instruction that *pro se* prisoners provide facts and not legal theories and arguments is well-intended, it is probable that this contributes to the apparent frivolousness of *pro se* complaints. The form should simply encourage the *pro se* litigant to set forth in a cogent manner *all* of the essential facts—the who, where, what, when, why, and how—that the *pro se* litigant reasonably believes to have *some relevance under the applicable law. Cf. Neal v. Miller*, 542 F.Supp. 79, 81 (S.D.Ill.1982). Founded upon an unawareness of the applicable law, as undoubtedly many *pro se* complaints are, and constrained by instructions unique to the *pro se* litigant, even a legitimate claim may be fodder for a motion to dismiss.

It is in this context that the court now addresses the sufficiency of Mr. DeSouto's complaint—the legitimacy of his § 1983 claim. The core of that claim, in which all factual allegations are accepted to be true, simply alleges that certain of the defendants, members of the staff at Kettle Moraine, "committed larceny [by] purloining legal and personal documentation under false pretexts." Other statements in the complaint suggest that the contents of Mr. DeSouto's "purloined documentation" was of special interest to the defendants, security officers and officials at Kettle Moraine, as it was "damaging" to the Department of Corrections. The complaint also suggests that the persons responsible for the "larceny" acted under the direction of supervisory officials at Kettle Moraine—Superintendent Cooke and Security Director Nagle. Furthermore, the complaint explicitly

alleges that Mr. Nagle participated in the "larceny."

The court interprets Mr. DeSouto's claim as one that he has been deprived of property without due process of law. The "documentation" that Mr. DeSouto claims to have been deprived of is "property" within the contemplation of the due process clause of the fourteenth amendment. Nevertheless, it is not the fact that a deprivation of that property has occurred that is susceptible to constitutional challenge, but rather the fact that the deprivation may not have been attended with due process. In other words, the question posed here is whether Mr. DeSouto has alleged facts that, accepted to be true, demonstrate a constitutional harm actionable under § 1983—a deprivation of property without due process of law.

Having so characterized Mr. DeSouto's claim, the court is constrained to assess its sufficiency against a background of complex and perhaps contradictory controlling authorities. Those authorities include the Supreme Court's decisions in *Parratt v. Taylor*, 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981), *Hudson v. Palmer*, 468 U.S. 517, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984), *Zinermon v. Burch*, —— U.S. ——, 110 S.Ct. 975, 108 L.Ed.2d 100 (1990), and, most recently, the seventh circuit court of appeals' en banc decision in *Easter House v. Felder*, 910 F.2d 1387 (7th Cir.1990) ("*Easter House II*"), which may be at odds with *Zinermon*. The court of appeals' earlier decision, *Easter House v. Felder*, 879 F.2d 1458 (7th Cir.1989) (en banc) ("*Easter House I*"), was vacated and remanded by the Supreme Court for reconsideration in light of *Zinermon*, *see* 110 S.Ct. 1314 (1990). Suffice it to say that the law governing this sort of § 1983 procedural due process claim is less than crystal clear.

As the Court pointed out in *Zinermon*, its last venture into the thicket of procedural due process, the constitutional requirement of the due process clause in a particular case is determined by balancing several factors:

First, the private interest that will be affected by the official action; second the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

110 S.Ct. at 984 (*quoting Mathews v. Eldridge*, 424 U.S. 319, 335, 96 S.Ct. 893, 903, 47 L.Ed.2d 18 (1976)).

In *Zinermon*, the Court stated the constitutional requirement of the due process clause as follows: "[i]n situations where the State *feasibly can* provide a predeprivation hearing before the taking of property, it *generally must* do so regardless of the adequacy of a postdeprivation tort remedy to compensate for the taking." 110 S.Ct. at 987 (emphasis added). Emerging from *Zinermon* is the general rule that the due process clause of the fourteenth amendment requires that some kind of a hearing be held *before* the state deprives a person of liberty or property. 110 S.Ct. at 984; *Cleveland Board of Education v. Loudermill*, 470 U.S. 532, 542, 105 S.Ct. 1487, 1493, 84 L.Ed.2d 494 (1985); *Easter House II*, 910 F.2d at 1410, 1412 (Cudahy, J., dissenting).

■ Nevertheless, under certain circumstances, where predeprivation process would be impractical, the Supreme Court has suggested that state law provisions for a postdeprivation hearing and an adequate remedy may satisfy the fourteenth amendment's due process requirement. This has come to be known as the "rule" of *Parratt*. *See, e.g., Hudson*, 468 U.S. at 517, 104 S.Ct. at 3195; *Easter House II*, 910 F.2d at 1408. That "rule" applies where predeprivation safeguards would have little preventative effect; when it applies, adequate state law remedies available after the deprivation is a *fait accompli* may provide the process that is constitutionally due. In such cases, any potential constitutional harm is not considered "complete"—actionable under § 1983—"unless and until" the postdeprivation process that the state has provided is deemed constitutionally inadequate.

*Hudson,* 468 U.S. at 517, 104 S.Ct. at 3195. Accordingly, the due process inquiry expands to include an examination of "the procedural safeguards built into the statutory or administrative procedure effecting the deprivation, and any remedies for erroneous deprivations provided by statute or tort law." *Zinermon,* 110 S.Ct. at 983.

In effect, *Parratt* acted as a bar to federal court to many persons who sought a constitutional remedy for even an arbitrary property deprivation in a § 1983 action; those persons were relegated to state courts to pursue colorably available, if uncertain, state law remedies after the fact. In *Zinermon,* however, while the Court did not reject the *Parratt* rule, it narrowed its scope; the Court reaffirmed the general rule that the general constitutional requirement is a predeprivation hearing, when feasible. The Court further explained that "*Parratt* is not an exception to the *Mathews* balancing test, but rather an application of that test to the unusual case in which one of the variables in the *Mathews* equation—the value of predeprivation safeguards—is negligible in preventing the kind of deprivation at issue." *Zinermon,* 110 S.Ct. at 985.

■ Unless the defendants in the instant case acted in a manner that was "random and unauthorized"—well beyond the foreseeable and predictable scope of their authority—as had the state officials in *Easter House II,* or unless their discretion was "circumscribed" by "established state procedures" as those terms were meant in *Zinermon,* it may well be that Mr. DeSouto had a constitutional entitlement to predeprivation process. *But cf. Tavarez v. O'Malley,* 826 F.2d 671, 677 (7th Cir.1987) (Posner, J.) (state officials cannot escape § 1983 liability simply by exceeding the scope of their authority). Only if that is not the case would the adequacy of the postdeprivation remedies available under Wisconsin law, *see* Wis.Stats. §§ 893.-80–.82, 893.83, 895.01, and 968.20, be relevant. That is, under *Zinermon,* the defendants cannot escape § 1983 liability for an "authorized and predictable" deprivation merely by pointing to the availability of postdeprivation state law remedies.

At this early stage in the action, the court is not satisfied that Mr. DeSouto's allegations, liberally construed and taken to be true, fail to state a claim entitling him to relief under the fourteenth amendment and § 1983. The court cannot now state with confidence that it appears beyond doubt that Mr. DeSouto can prove no set of facts in support of his due process claim. In light of the complexity of the legal issues presented, the *pro se* law clerk is requested to attempt to find counsel willing to assist Mr. DeSouto in the continued prosecution of this action.

Therefore, IT IS ORDERED that the defendants' motion to dismiss be and hereby is denied.