Johnnie ROSE, Plaintiff,

v.

**KETTLE MORAINE CORRECTIONAL INSTITUTION OFFICIALS, et al.,** Defendants.

No. 91–C–950.

United States District Court, E.D. Wisconsin.

Nov. 29, 1991.

Johnnie Rose, pro se.

No appearance for defendants.

DECISION AND ORDER

MYRON L. GORDON, Senior District Judge.

The plaintiff, Johnnie Rose, currently incarcerated at the Racine Correctional Institution, seeks redress under 42 U.S.C.

§ 1983 following his eight-day placement in adjustment segregation. Mr. Rose has filed a petition for leave to proceed in forma pauperis. The court will grant the petition.

In order to authorize a litigant to proceed in forma pauperis, the court must make two determinations: first, whether the litigant is unable to pay the costs of commencing the action; and second, whether the action is frivolous or malicious. 28 U.S.C. § 1915(a) and (d). The court is obliged to give Mr. Rose's pro se allegations, however inartfully pleaded, a liberal construction. *See Haines v. Kerner,* 404 U.S. 519, 520–21, 92 S.Ct. 594, 595–96, 30 L.Ed.2d 652 (1972). Upon review of Mr. Rose's affidavit of indigence, the court is satisfied that Mr. Rose is unable to pay the costs of commencing this action. Accordingly, the court is satisfied that Mr. Rose has met the requirements of 28 U.S.C. § 1915(a).

An action is frivolous, for purposes of 28 U.S.C. § 1915(d), if there is no arguable basis for relief in either law or in fact. *Neitzke v. Williams,* 490 U.S. 319, 325, 109 S.Ct. 1827, 1831, 104 L.Ed.2d 338 (1989). In other words, the question before the court is whether the complaint discloses even an arguable violation of Mr. Rose's rights under the federal Constitution and 42 U.S.C. § 1983. (The court has no reason to believe the complaint is malicious.)

■ Mr. Rose's statement of claim alleges that while he was an inmate at the Kettle Moraine Correctional Institution he received a conduct report (for an undisclosed reason) and was subsequently found guilty and sentenced to eight days of adjustment segregation. He alleges that while in adjustment segregation many of his "normal privileges"—phone calls, writing materials, and the like—were denied him. He also alleges that after he filed an inmate complaint, Kenneth Sondalle ("acting administrator" for prisoner complaints) informed him that he should have been sentenced to six days of adjustment segregation instead of eight. He further alleges that Mr. Sondalle has since corrected the prison records. He now seeks what he calls "punitive damages" in the amount of

$5000 for the alleged constitutional wrong he has suffered.

To the extent that Mr. Rose's complaint can be construed to assert a claim that he was deprived of his liberty without due process of law in violation of the fourteenth amendment, the court must determine whether Wisconsin law has created a constitutionally-cognizable liberty interest for him in the first place. *Hewitt v. Helms,* 459 U.S. 460, 470–72, 103 S.Ct. 864, 870–72, 74 L.Ed.2d 675 (1983); *Kentucky Department of Corrections v. Thompson,* 490 U.S. 454, 460–61, 109 S.Ct. 1904, 1908–09, 104 L.Ed.2d 506 (1989); *Smith v. Shettle,* 946 F.2d 1250, 1252 (7th Cir.1991). At one time, whether a state had created a liberty interest protected by the Constitution seemingly turned upon "grammatical distinctions"—whether the state law employed what had been termed "explicitly mandatory language" directing the decisionmaker to a particular outcome based upon certain "substantive predicates." *Smith,* 946 F.2d at 1253. *But see Russ v. Young,* 895 F.2d 1149, 1153–54 (7th Cir. 1990); *Cain v. Lane,* 857 F.2d 1139, 1144 (7th Cir.1988). It is now clear that "[n]o magic form of words is required to make a regulation mandatory." *Smith,* 946 F.2d at 1253.

A state creates such a liberty interest, albeit an "artificial" one, when it establishes criteria governing the deprivation of the interest that are

> (1) *binding,* that is, mandatory upon the officials to whom they are addressed; (2) *exhaustive,* in the sense that if none of the criteria is satisfied the prison officials are forbidden to segregate the inmate; and (3) *definite,* in the sense that none of the criteria is so open-ended that it leaves the officials with essentially limitless discretion to segregate the inmate or not as they please.

*Smith,* 946 F.2d at 1252 (emphasis in original) (citations omitted); *Miller v. Henman,* 804 F.2d 421 (7th Cir.1986); *Kentucky Department of Corrections v. Thompson,* 490 U.S. at 462–63, 109 S.Ct. at 1909–10; *Wallace v. Robinson,* 940 F.2d 243, 246–47 (7th Cir.1991) (en banc).

Accordingly, the court has examined the relevant provisions of the Wisconsin Administrative Code ("the Code") to determine whether Wisconsin has even *arguably* created such an "artificial" liberty interest. Upon review of the Code, specifically § DOC 303, in light of *Smith*, the court is *not* prepared to state that the Code is utterly devoid of what might be construed as binding, exhaustive, and definite criteria limiting the discretion of corrections officials to place inmates in adjustment segregation for a particular duration.

Therefore, it is at least *arguable* that the Code has created for the plaintiff the type of "artificial" liberty or property interest protected by due process clause of the fourteenth amendment. If Mr. Rose was held in adjustment segregation when he should not have been, he may well have a valid constitutional claim. Therefore, the plaintiff will be permitted to proceed with his claim that he received an unwarranted additional two days of adjustment segregation—with the corresponding, and potentially unconstitutional, deprivations of "normal privileges"—without due process of law.

■ As to Mr. Rose's claim that he was subjected to mistreatment while in adjustment segregation, in violation of the eighth amendment's proscription of cruel and unusual punishment, the court will allow him to proceed with that claim, as well. *See Dixon v. Pitchford*, 843 F.2d 268, 270 (7th Cir.1988) ("§ 1915(a) makes the case rather than the claim the appropriate unit of decision"); *see also Aiello v. Kingston*, 947 F.2d 834, 836 (7th Cir.1991) (once the court grants leave to proceed with one claim for relief, there are "no incremental costs of adding other legal arguments, and thus no need for a further ruling concerning the prepayment of these costs"). However, to prevail on such a claim the plaintiff will be obligated to prove that his accomodations in adjustment segregation offended "the evolving standards of decency that mark the progress of a maturing society"—and were not simply the product of "temporary neglect" falling short of "unconstitutional proportions." *See, e.g., Harris v. Fleming*, 839 F.2d 1232, 1235–36 (7th Cir.1988).

Moreover, the plaintiff will be obligated to satisfy the "deliberate indifference" standard for any such eighth amendment claim, as articulated in *Wilson v. Seiter*, —— U.S. ——, 111 S.Ct. 2321, 2326, 115 L.Ed.2d 271 (1991) (a prisoner claiming that conditions of his confinement violate the eighth amendment must show a culpable state of mind on the part of corrections officials). *See also Duckworth v. Franzen*, 780 F.2d 645 (7th Cir.1985), *cert. denied*, 479 U.S. 816, 107 S.Ct. 71, 93 L.Ed.2d 28 (1986).

Mr. Rose's complaint, viewed as a whole and construed liberally, meets the requirements of 28 U.S.C. § 1915(d). Accordingly, the defendants will be called upon to respond to the allegations contained in Mr. Rose's complaint.

In addition to his complaint and in forma pauperis petition, Mr. Rose has filed a motion for appointment of counsel. The motion will be granted; the pro se law clerk is hereby requested to attempt to obtain legal counsel for Mr. Rose. However, if the pro se law clerk is unable to obtain legal counsel for Mr. Rose by January 15, 1992, Mr. Rose will be obligated to prosecute his action pro se.

Therefore, IT IS ORDERED that Mr. Rose's petition for leave to proceed in forma pauperis be and hereby is granted.