LEMKE, Appellant, vs. ANDERS, Respondent. [Two cases.]

*April 10—May 6, 1952.*

556

For the appellants there was a brief by *Leicht & Curran* and *Raymond H. Scott,* all of Medford, and oral argument by *Mr. Scott.*

For the respondent the cause was submitted on the brief of *Stafford & Stafford,* attorneys, and *Robert F. Pfiffner* of counsel, all of Chippewa Falls.

FRITZ, C. J.   The plaintiffs, Albin and Rudolph Lemke, purchased an eighty-acre tract of timberland and began cutting the standing timber on the land. As the result of a recent survey which placed the east boundary of their property west of a fence which they supposed was the east property line, a dispute arose between them and the defendant, Edward Herman Anders, who owned the land to the east of plaintiffs' tract. He endeavored to have plaintiffs stop cutting the timber on the land in dispute, but they continued to cut the trees.

On December 10, 1948, Anders' attorney, Charles E. Stickler, prepared at the office of a justice of the peace,

Arthur Crawford, a complaint charging plaintiffs with wilfully severing trees from the land of another in violation of sec. 343.511, Stats. 1947. Anders swore to the complaint and Crawford, as justice of the peace, issued a warrant, returnable before himself, charging the crime alleged in the complaint. Crawford delivered the warrant to a deputy sheriff who took Albin and Rudolph Lemke into custody at about seven o'clock the following Saturday morning and placed them in jail at Cornell at about eight o'clock. Before anyone else appeared before Justice Crawford, he went to the cell occupied by plaintiffs and suggested to them that the civil matter be settled. At ten o'clock a so-called preliminary hearing was held before Justice Crawford in a room adjoining the cell, and his docket shows that, in addition to Albin and Rudolph Lemke, Anders, Stickler, and Alfred Tilbury, a surveyor employed by Anders, were present throughout the hearing and they testified concerning the crime alleged to have been committed by the plaintiffs. The justice's docket shows that after testimony was taken at the so-called preliminary hearing, Crawford said to one of the plaintiffs, "You better settle this for $1,800;" and in the presence of Anders, Stickler, and Tilbury, the justice suggested several times to plaintiffs that the matter should be settled. All of the testimony indicates that all of the conversations in respect to settlement were in that one room; that Anders and Stickler were at all times present, and the participants were from four to eight feet apart. In the presence of Anders, Stickler said to plaintiffs: "If we didn't settle it was a Waupun charge and he would have to take us to jail. . . . If we didn't settle it was a criminal charge and we would have to be put further to jail."

From the plaintiffs' testimony Crawford seems to have been most anxious for a settlement, and it appears that he referred to it on several occasions. Crawford told Anders in the presence of the plaintiffs that they would not settle

for $1,800 and he asked Anders how much the damages were. Anders answered, "The law reads $1 an inch across the stumpage and that the damages would be approximately $4,000." It was significant that the amount mentioned by Anders is the amount of the bail fixed by Crawford; and that in Anders' complaint signed before the justice, he represented that the value of the timber taken was only $1,200. The father of plaintiffs appeared in the afternoon and after having talked with the plaintiffs he asked Crawford, "How much will it take to settle this?" And he asked further as to the amount of the bail and when he was told that it was $4,000, he replied, "How come that you ask such an enormous bail? Have they killed anybody?" The father testified also that Anders and his representatives "wanted to let us settle for $1,800 rather than take the boys to the Chippewa county jail; if the $1,800 were paid they wanted to drop the whole thing and forget about it." Although it appears from Crawford's docket entries that the preliminary hearings might well have been conducted in not more than a couple of hours, the plaintiffs were detained at Cornell from eight o'clock in the morning until between five and six o'clock in the afternoon without having had an opportunity to obtain any food, and that late in the afternoon they were taken to the Chippewa county jail.

Upon the trial of this action in the circuit court, Justice Crawford was called as a witness by both the plaintiffs and Anders, but Crawford was not asked by Anders' attorney to relate what took place with respect to settlement negotiations and consequently did not deny the testimony of plaintiffs as to those matters. Stickler and likewise Tilbury were called as witnesses for the defendant but were not asked to testify about the negotiations with respect to settlement in the jail at Cornell; and they did not deny the testimony of the plaintiffs in that respect. It is undisputed that, as testified by plaintiffs, on several occasions during the hearing before

Justice Crawford offers were made by Anders to settle the matter by having the plaintiffs pay him $1,800 and recognize the property line as fixed by Tilbury's survey; and that plaintiffs declined those offers. However, when Anders testified at the trial, it seems he apparently rather cautiously sought to avoid admitting or denying the facts testified to by the plaintiffs, by stating that he was hard of hearing and that he heard little, if any, of the conversation. But from the fact that Anders did testify at the preliminary hearing, as appears from the docket of the justice, it is apparent that he was not so hard of hearing as not to have heard the conversation in respect to the settlement sought by him. And he did not deny the testimony of the plaintiffs and their father that they were being pressed for settlement while they were held unlawfully in jail; and there is no evidence to refute their testimony.

During the hearing before Justice Crawford he concluded that he did not have jurisdiction to try the offense charged and that the plaintiffs would have to be bound over to the circuit court branch of the Chippewa county court for trial. The plaintiffs tried to secure bail, fixed by the justice at $4,000, and they were kept in confinement in jail at Cornell during an ensuing delay of several hours, and acceptable bail not having been furnished, they were then transferred during the afternoon to the county jail in Chippewa Falls, where they remained in confinement for about two and one-half days. They were then arraigned before the county judge, and entered pleas of not guilty, waived a preliminary examination, and were bound over to the circuit court for trial. Upon the deposit of $4,000 as bail, they were released from custody, three and one-half days after their arrest.

On March 10, 1949, Anders commenced a civil action against Albin and Rudolph Lemke to recover damages for the timber cut from the land in dispute, and claimed by Anders as his on the basis of the recent survey. As a result

of the commencement of that civil action, it appeared that the true location of the property line was questionable, and the criminal charge against the Lemkes was dismissed, on motion of the district attorney. Thereafter, Anders' civil action was tried and judgment against him was awarded to Albin and Rudolph Lemke. They then commenced the actions now at bar to recover damages for Anders' malicious prosecution and false imprisonment. On a joint trial of the actions the jury found in a special verdict that at the time in question, Anders did not cause Albin Lemke and Rudolph Lemke to be falsely imprisoned; and in answer to the question as to the damages sustained by each of the plaintiffs, the jury's answers were "Nothing."

There is no basis for any doubt that the plaintiffs were falsely imprisoned pursuant to the warrant procured by Anders on which they were arrested on the charge of wilfully severing from the land of Anders standing trees growing thereon of the value of $1,200, and converting the same to their own use without the consent of the owner, in violation of sec. 343.511, Stats. 1947. The punishment imposed for a violation of that section was as prescribed in the general larceny statute (sec. 343.17) for larceny of property of the same value. As the value of the timber in question was fixed at $1,200 in the warrant procured by Anders, the plaintiffs were charged with an offense punishable by imprisonment in the state prison, not more than ten years or less than one year. As that warrant was made returnable before the issuing justice of the peace, Crawford—who was a justice within Chippewa county—there was applicable thereto ch. 32, Laws of 1921, as amended by ch. 54, Laws of 1929, relating to the county court of Chippewa county, which provided :

". . . no justice of the peace within said county shall exercise any jurisdiction in criminal cases where the offense charged is punishable by imprisonment in the state prison.

Provided that any justice of the peace within said county may issue warrants in all such cases returnable before said judge."

Under this statute, the justice of the peace had the power to issue a warrant returnable before the county judge, but the justice had no power to issue a warrant contrary to said statute. Consequently Justice Crawford acted wholly without authority in issuing the warrants returnable before himself, which charged the Lemkes with an offense punishable by imprisonment in the state prison; and as he had no jurisdiction of the subject matter, nor the issuance of process for the arrest of the plaintiffs and to cause them to be held in custody, the use of such process and the arrest thereunder were absolutely void. *Heller v. Clarke,* 121 Wis. 71, 74, 98 N. W. 952.

In the case at bar there is ample evidence of Anders' participation in the unlawful detention of the plaintiffs by his requesting, instigating, encouraging, and countenancing their arrest. His participation amounted to an adoption and ratification of the initial wrongful arrest, and was sufficient to predicate liability on Anders. *Fenelon v. Butts,* 53 Wis. 344, 352, 10 N. W. 501.

The evidence discloses not merely Anders' presence, but clearly shows his active and full participation in the entire proceedings; that he and his attorney, Stickler, were present at the jail in Cornell when the plaintiffs were brought from the cell to the adjoining room for the hearing and Anders sat in close proximity to Justice Crawford continuously and engaged in conversation with him intermittently throughout the entire proceedings. The justice's docket shows that Anders was the first witness to testify and that throughout the entire affair, Anders was represented by his attorney, Stickler, and condoned and ratified his attorney's actions. Undisputed testimony of Albin Lemke is that while they were

confined in the cell prior to the hearing the justice appeared and asked them to settle the matter by paying Anders $1,800 damages and recognizing the property line as fixed by the survey; that a similar attempt was made several times during the proceedings in Cornell; and the plaintiff's father testified that after his arrival in Cornell to furnish bail the same offer of settlement was made to him.

The warrant issued by Justice Crawford was void on its face for the reasons stated above, and in view of the above-stated undisputed facts and circumstances, Anders was clearly guilty of personally participating in the false imprisonment of the plaintiffs as a matter of law. As the warrant issued by the justice of the peace was clearly void, the arrest and imprisonment of the plaintiffs thereunder was unlawful. As stated in *Gelzenleuchter v. Niemeyer,* 64 Wis. 316, 320, 25 N. W. 442:

: "It will be observed that none of the cases cited go to the extent of holding that a warrant void upon its face is a defense in an action of false imprisonment for one who participated in making the arrest. On the contrary, two of the cases squarely hold that such void warrant is no protection to such a person in such an action."

In the *Gelzenleuchter Case, supra,* which was an action for false imprisonment, the defendant had sworn to a complaint before a justice. A warrant for the arrest of plaintiff was issued and he was arrested and detained. The warrant was held to be void for the reason that the complaint charged no offense. The court concluded that the *mere* fact that defendant had received the warrant from the justice, delivered it to his attorney, who delivered it to the officer for service, was such participation in the detention as to make him liable for false imprisonment. *Frazier v. Turner,* 76 Wis. 562, 45 N. W. 411, was likewise an action for false imprisonment. The defendant had obtained the void warrant and she delivered it to an officer for service. The court held that that

simple act constituted a participation in the unlawful detention.

As stated in 35 C. J. S., False Imprisonment, p. 550, sec. 37:

"As a general rule, all those who, by direct act or indirect procurement, personally participate in or proximately cause the unlawful restraint or detention are liable therefor as joint tort-feasors, jointly and severally, regardless of the degree or extent of their individual activity, and each is so liable although he did not know that the detention was illegal in its inception."

Anders' attorney, Stickler, was admittedly representing Anders throughout the entire affair and Anders was present during all of Stickler's actions including the hearing in Cornell—all of which was obviously approved by Anders.

Under the facts and circumstances in these actions and the general rules of law applicable thereto as stated above, the jury's finding that Anders did not cause the plaintiffs to be falsely imprisoned cannot be sustained. Likewise there cannot be approved the jury's answer "Nothing" to the questions as to the amount of the damages sustained by each of the plaintiffs by reason of said false imprisonment.

*By the Court.*—Judgments reversed and causes remanded with directions for a new trial in said actions.