Vances H. SMITH, Plaintiff,

v.

Gary McCAUGHTRY and Lynn Oestreich, Defendants.

No. 92–C–182.

United States District Court,
E.D. Wisconsin.

Sept. 4, 1992.

Vances H. Smith, pro se.

James E. Doyle, Atty. Gen., by Stephen J. Nicks, Asst. Atty. Gen., Madison, Wis., for defendants.

### DECISION and ORDER

MYRON L. GORDON, Senior District Judge.

On April 10, 1992, this court granted Vances H. Smith, currently incarcerated at

the Waupun Correctional Institution, leave to proceed in forma pauperis in the above-captioned 42 U.S.C. § 1983 action. The defendants, the warden and the security director at Waupun, both employees of the state of Wisconsin, have filed a motion to dismiss the complaint for failure to state a claim, pursuant to Rule 12(b)(6), Federal Rules of Civil Procedure, and, along with it, the action in its entirety.

The motion will be denied.

### I.

Mr. Smith makes the following allegations in his complaint:

1. On January 9, 1992, he received a conduct report "alleging a personal letter allegely [sic] written by an inmate Dempsie Coburn to his brother James Coburn ... contained a one line statement indicating [Mr. Smith] was doing legal work for him for [$] 700.00."

2. On January 13, 1992, Mr. Smith "spoke with his staff advocate in preparation for a full due process hearing which had been requested on this conduct report and at that time request[ed] as a witness Mr. Dempsie Coburn." The form was "submitted and approved" on that date.

3. On January 28, 1992, a disciplinary hearing was commenced, but was postponed because Mr. Smith had not been given the opportunity to review the evidence against him or to have his witness present.

4. On February 6, 1992, an "unanounced [sic] hearing was spung [sprung?] on all parties, including [Mr. Smith's] staff advocate, who objected to the hearing because she was not put on notice and thus was completely unprepared." Mr. Smith was not notified of the hearing.

5. Mr. Smith raised the following objections at the hearing: (a) no notice had been issued pursuant to Wisconsin Administrative Code § DOC 303.81(9); (b) no witnesses were present, "nor ... had any statements or evidence been obtained from witnesses"; (c) the staff advocate "was not able to present any evidence on [Mr. Smith's] behalf because the hearing was

neither scheduled nor was sufficient notice given to her, [and she] was not even given an opportunity to obtain a copy of the conduct report itself, nor her own file on the case"; (d) the security director had "lost jurisdiction to then hold the hearing because the 21 day time limit in which to hold such hearing had expired, as specified in [Wisconsin Administrative Code § DOC] 303.76(3)," and no extension had been "requested or entered"; and (e) the security director "was not a [sic] impartial hearing examiner" because he was "seeking retaliation against" Mr. Smith, who had commenced another action against him in state court.

6. The security director "after being totally informed of these facts deliberatly [sic] and maliciously ignored these facts, and even though the evidence did not support the charge, entered a decision of guilty and imposed punishment to the maximum allowed for the offense." That punishment consisted of six days of program segregation and 120 days of adjustment segregation. Mr. Smith seeks compensatory and punitive damages from each defendant.

Finally, Mr. Smith also claims to have invoked the "pendant [sic] jurisdiction" of the court, presumably to assert claims arising under Wisconsin law. However, the nature of his state law claims is not apparent from the allegations in his complaint. Furthermore, even if such state law claims were clearly stated, this court is not obliged to consider them. *See Tavarez v. O'Malley*, 826 F.2d 671, 677 (7th Cir.1987) (the function of section 1983 is to redress violations of federal, not state, law).

### II.

In addressing a motion to dismiss, the court accepts as true all factual allegations of the complaint including any materials appended to it. *See Doe v. First Nat'l Bank of Chicago*, 865 F.2d 864, 873 (7th Cir.1989); *Beam v. IPCO Corp.*, 838 F.2d 242, 244 (7th Cir.1988). As the defendants concede, the complaint cannot be dismissed unless "it appears beyond doubt that the plaintiff can prove no set of facts in sup-

port of his claim which would entitle him to relief." *Hughes v. Rowe*, 449 U.S. 5, 10, 101 S.Ct. 173, 176, 66 L.Ed.2d 163 (1980); *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957); *De-Souto v. Cooke*, 751 F.Supp. 794, 797 (E.D.Wis.1990).

I understand Mr. Smith to allege that he has been deprived of his liberty without fair procedure in violation of the due process clauses of the Fifth and Fourteenth amendments. The defendants do not question that Mr. Smith has a protected liberty interest in remaining out of adjustment segregation and in the general prison population. *See Smith v. Shettle*, 946 F.2d 1250, 1252 (7th Cir.1991); *Rose v. Kettle Moraine Correctional Institution Officials*, 778 F.Supp. 1009, 1010 (E.D.Wis. 1991). As an inmate charged in a conduct report with a disciplinary violation, Mr. Smith was protected from arbitrary state action by the due process clause. *Wolff v. McDonnell*, 418 U.S. 539, 558, 564–71, 94 S.Ct. 2963, 2975, 2978–82, 41 L.Ed.2d 935 (1974). Accordingly, before the state deprived him of a protected liberty interest, he was constitutionally due:

> (1) advance (at least 24 hours before the hearing) written notice of the claimed violation; (2) the opportunity to be heard before an impartial decision maker; (3) the opportunity to call witnesses and present documentary evidence (when consistent with institutional safety); and (4) a written statement by the fact-finder of the evidence relied on and the reasons for the disciplinary action.

*Rasheed–Bey v. Duckworth*, 969 F.2d 357, 361 (7th Cir.1992). *See also Superintendent v. Hill*, 472 U.S. 445, 454, 105 S.Ct. 2768, 2773, 86 L.Ed.2d 356 (1985); *Wolff*, 418 U.S. at 563–71, 94 S.Ct. at 2978–82.

The allegations in Mr. Smith's complaint, taken as true for purposes of ruling on this motion to dismiss, persuade me that it is at least arguable that the state failed to provide Mr. Smith with a due process hearing consonant with *Wolff*. Specifically, the state may have failed to comply with *Wolff* if the hearing, which the prison authorities unfairly "sprung" upon Mr. Smith (for rea-

sons unknown), precluded him from calling defense witnesses and from presenting evidence in his defense. Moreover, Mr. Smith alleges that the security director was not an impartial decision maker. Whether Mr. Smith states a claim entitling him to relief under the due process clause, and 42 U.S.C. § 1983, depends upon whether the defendants' conduct, in failing to provide Mr. Smith with a hearing consonant with *Wolff*, was "random and unauthorized" and, if so, whether Wisconsin law provides an "adequate" post-deprivation remedy. *See Zinermon v. Burch*, 494 U.S. 113, 110 S.Ct. 975, 108 L.Ed.2d 100 (1990); *Hudson v. Palmer*, 468 U.S. 517, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1983); *Parratt v. Taylor*, 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981), *overruled on other grounds, Daniels v. Williams*, 474 U.S. 327, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986); *Easter House v. Felder*, 910 F.2d 1387 (7th Cir.1990), *cert. denied*, —— U.S. ——, 111 S.Ct. 783, 112 L.Ed.2d 846 (1991); *Sturdevant v. Haferman*, 798 F.Supp. 536 (E.D.Wis.1992) (Reynolds, J.) (examining these authorities); *DeSouto*, 751 F.Supp. at 797 (same).

In *Parratt*, the Supreme Court drew a distinction between deprivations resulting from "the unauthorized failure of agents of the State to follow established procedures" and those that "occur as a result of some established state procedure." *Parratt*, 451 U.S. at 543, 101 S.Ct. at 1917. The court held that where a deprivation results from the "unauthorized" failure of a state official to follow established procedure, the due process inquiry expands to consider whether the common law or statutes of the state provide an adequate remedy for the deprivation. *Id.* at 543–44, 101 S.Ct. at 1916–17. Only where those remedies are inadequate is the state thought not to have provided all the process that is constitutionally "due"; only then may persons who allege that they have suffered a deprivation proceed under § 1983. *Id.*

Three years later, in *Hudson*, the Court revisited the rationale of *Parratt*. In *Hudson*, the Court extended the *Parratt* rule to deprivations resulting from "random and unauthorized intentional" conduct by state employees, suggesting that it was impossi-

ble for the state to predict, anticipate and control in advance either type of conduct. *Hudson,* 468 U.S. at 532–33, 104 S.Ct. at 3203–04. The Court noted that in such cases "the state's action is not complete *until and unless* it provides or refuses to provide a suitable postdeprivation remedy." *Id.* at 533, 104 S.Ct. at 3204 (emphasis added).

In *Zinermon,* the Court acknowledged that under the circumstances present in *Parratt* (deprivation resulting from the negligence of state officials) and *Hudson* (deprivation resulting from a state official pursuing a "random, unauthorized vendetta" against a prisoner), "post deprivation tort remedies are all the process that is due, simply because they are the only remedies the State could be expected to provide." *Zinermon,* 494 U.S. at 128, 110 S.Ct. at 985. Yet, the Court left no doubt that *Parratt* and *Hudson* do not stand for the simplistic proposition that state officials can always escape § 1983 liability for an illegal deprivation by simply characterizing their conduct as an unauthorized departure from established state practices that is remediable, after the fact, by an adequate state tort remedy. *Id.* at 138 n. 20, 110 S.Ct. at 990 n. 20.

The Court noted that the role of the due process clause is "to hold state officials accountable for their abuse of their broadly delegated, uncircumscribed power to effect the deprivation at issue." *Id.* at 136, 110 S.Ct. at 989. To that end, the Court concluded that those state officials who are granted authority to effect deprivations have imposed upon them by the Constitution "the State's concomitant duty to see that no deprivations occur without adequate procedural protections." *Id.* at 135, 110 S.Ct. at 988. The Court emphasized that, when given "broad power and little guidance" by state statutes, state officials cannot escape liability for failure "to provide constitutionally required procedural safeguards ... by invoking *Parratt* and *Hudson.*" *Id.*

The Court flatly dismissed the notion that state officials would not face liability under the due process clause when they "disregarded their duty to ensure that the proper procedures were followed." *Id.* at 137, 110 S.Ct. at 989. The Court stated that:

> [I]t would indeed be strange to allow state officials to escape § 1983 liability for failing to provide constitutionally required procedural protections, by assuming that those procedures would be futile because the same state officials would find a way to subvert them.

*Id.* at 137–38, 110 S.Ct. at 990.

■ To determine whether conduct by state officials resulting in a deprivation is "random and unauthorized—unpredictable" or "authorized and foreseeable—predictable" requires an examination of the degree of discretion possessed by the defendant state officials and the extent to which their discretion is "uncircumscribed." *Easter House,* 910 F.2d at 1400. If defendant state officials have uncircumscribed power to conduct prison deprivation hearings and subsequently abuse that power then, for the defendant state officials to escape § 1983 liability, it must be shown, among other things, that the deprivation of the plaintiff's protected liberty interest was unpredictable; that predeprivation process was not necessarily possible; and that the defendant state officials' conduct can be characterized as unauthorized in the sense that term is used in *Parratt* and *Hudson.* *Zinermon,* 494 U.S. at 136–38, 110 S.Ct. at 988–90.

### III.

■ The defendants seek to absolve themselves of § 1983 liability by asserting that their conduct was a "random and unauthorized" deprivation of Mr. Smith's liberty for which "meaningful state remedies" exist. The defendants cite *Duenas v. Nagle,* 765 F.Supp. 1393 (W.D.Wis.1991), to support their argument. *Duenas* is a case in which similar allegations to those of Mr. Smith were found not to state a claim under § 1983.

Implicit in the allegations of Mr. Smith's complaint is the suggestion that the state has granted both defendants, the warden and the security director at Waupun,

broadly delegated, uncircumscribed authority to effect deprivations of the liberty of Waupun inmates in the administration of the conduct report and disciplinary hearing system. An examination of established state regulations published in § DOC of the Wisconsin Administrative Code supports this view. The Code indicates that the legislature has generally delegated to the defendants a broad level of discretion to initiate, administrate, implement, oversee, and adjudge disciplinary hearing procedures at Waupun.

The next issue then becomes whether Mr. Smith's complaint, liberally construed, alleges that the defendants abused their broadly delegated authority in their treatment of Mr. Smith's conduct report to the extent that under *Zinermon*, Mr. Smith states a § 1983 claim. Given the uncircumscribed power delegated to state officials to effect the kind of deprivation allegedly suffered by Mr. Smith, the state can hardly claim that such a potentially erroneous deprivation was unpredictable. On the contrary, in light of such a broad delegation, some deprivations, including the one allegedly bestowed upon Mr. Smith, must be deemed foreseeable and thus predictable at a specific point in time—that time being when a disciplinary hearing is commenced.

The deprivation alleged is also one that the state could have prevented "through the implementation of additional predeprivation procedural safeguards." *See Easter House*, 910 F.2d at 1401. It cannot now be said that adequate procedural safeguards would have done Mr. Smith no good or that they were impossible. Nor can it be said that the state was "truly unable" to provide Mr. Smith with the predeprivation hearing to which he was entitled under *Wolff*.

Finally, the defendants' conduct was not "unauthorized" as that term was used in *Parratt* and *Hudson*. At this stage of the proceedings, it would appear that the state delegated to the defendants the power and *authority* to effect "the very deprivation complained of here"; thus the defendants were obligated to discharge the state's "concomitant duty" to initiate procedural safeguards to guard against an unlawful deprivation. *See Zinermon*, 494 U.S. at 138, 110 S.Ct. at 990. In *Parratt* and *Hudson*, the defendant state officials had no similar duty. *Id.*

I believe that Mr. Smith's complaint, liberally construed, alleges a "predictable" deprivation of his liberty as a result of "authorized and predictable" conduct by state officials. *Zinermon* has made it clear that the due process clause holds "state officials accountable for their abuse of their broadly delegated, uncircumscribed power" to effect a deprivation of liberty or property. *Zinermon*, 494 U.S. at 136, 110 S.Ct. at 989. The defendants' alleged decision to effect an "authorized" and "predictable" deprivation of Mr. Smith's liberty without providing the requisite procedural safeguards is the equivalent of a conscious decision by *the state* to ignore Mr. Smith's rights guaranteed by the Constitution. Thus, under *Zinermon*, the defendants cannot escape § 1983 liability for the "authorized and predictable" deprivation of Mr. Smith's liberty by pointing to the availability of adequate postdeprivation state law remedies. *But cf. Duenas.*

■ Even if the defendants' characterization of their conduct as "random and unauthorized" were to be countenanced, they could not escape liability under § 1983 unless the state law remedies were adequate. In recognition of this requirement, the defendants exhort the adequacy of a remedy available to Mr. Smith under Wisconsin law: a writ of certiorari filed in a state court. The defendants make no mention of tort remedies or any other remedies besides the writ of certiorari.

The defendants point out that in *Duenas* the writ of certiorari was found to be an adequate state law remedy for purposes of *Parratt* and *Hudson*. *Duenas*, 765 F.Supp. at 1400 (*citing State ex rel. Staples v. Department of Health and Social Services*, 115 Wis.2d 363, 340 N.W.2d 194 (1983)). However, in a recent decision, another branch of this court has also disagreed with *Duenas*. *Sturdevant v. Haferman*, 798 F.Supp. 536, 540–541 (E.D.Wis. 1992) (Reynolds, J.).

In *Sturdevant*, the court acknowledged that a post-deprivation remedy is "inadequate" only if it "is meaningless or nonexistent and, thus, in no way can be said to provide the due process relief guaranteed by the fourteenth amendment." *Id.* at 540 (*quoting Easter House*, 910 F.2d at 1406). The court noted that an inmate pursuing the state law certiorari remedy "may seek only expungement of a conduct report and may not recover any [monetary] damages." *Id.* at 540. The court found that the state law certiorari remedy provided only incomplete redress for the distinct harms suffered by an inmate: the inmate "could not pursue any remedy for his allegedly wrongful placement in adjustment segregation." *Id.* at 540. Accordingly, the state law writ of certiorari, which "does not provide any redress" for an inmate who is wrongfully placed in adjustment segregation, was found to be "a meaningless and therefore inadequate post-deprivation remedy." *Sturdevant*, 798 F.Supp. at 541.

I agree with Judge Reynolds' determination that the state law certiorari remedy is inadequate under *Parratt* and *Hudson*. Thus, even if the defendants' conduct were considered "random and unauthorized," Mr. Smith, who alleges that he was wrongfully placed in adjustment segregation, would still be entitled to seek redress under § 1983.

### IV.

█ Mr. Smith purports to bring this § 1983 action for money damages against the defendants in both their individual and official capacities. However, both defendants are employees of the State of Wisconsin; state employees sued for money damages in their official capacity are not "persons" within the meaning of that term as it appears in § 1983. *See Will v. Michigan Department of State Police*, 491 U.S. 58, 71, 109 S.Ct. 2304, 2311, 105 L.Ed.2d 45 (1989). To the extent that Mr. Smith's complaint might be read to assert any § 1983 claims seeking money damages from the defendants in their *official* capacities (no official policies or practices are directly challenged), those claims will be dismissed.

However, that leaves standing the remainder of the complaint, which includes individual capacity claims against the defendants. At this early stage of proceedings, I am satisfied that Mr. Smith's allegations, liberally construed and taken to be true, state a claim for relief from the defendants in their individual capacities under the due process clause and under § 1983.

### ORDER

Therefore, IT IS ORDERED that the defendants' motion to dismiss the complaint and the action be and hereby is denied.

IT IS ALSO ORDERED that the plaintiff's claims seeking money damages under 42 U.S.C. § 1983 from the defendants in their official capacities be and hereby are dismissed.