Leon IRBY, Plaintiff-Appellant-Petitioner,

v.

Phillip G. MACHT, Lt. Larry J. Julson, Mary Klemz, David Warner and Gary Whitley, Defendants-Respondents.

Supreme Court

*No. 90–2662. Oral argument April 26, 1994.—Decided June 17, 1994.*

(Also reported in 522 N.W.2d 9.)

For the plaintiff-appellant-petitioner there were briefs and oral argument by *Martha K. Askins,* assistant state public defender.

For the defendants-respondents the cause was argued by *Joanne F. Kloppenburg,* assistant attorney general, with whom on the brief was *James E. Doyle,* attorney general.

JON P. WILCOX, J.   The petitioner, Leon J. Irby (Irby), seeks review of a decision of the court of appeals affirming the trial court's dismissal of his 42 U.S.C., sec. 1983 (sec. 1983) claims.[1] Irby maintains that the defendants, all of whom were Department of Corrections (DOC) employees, violated his due process rights by placing him in segregation and reducing his earned good-time credits without according him the procedural protections mandated by the Wisconsin Administrative Code. The court of appeals held that Irby had not been deprived of due process because the

---

[1] 42 U.S.C., sec. 1983 states that:

Every person who, under color of any statute, ordinance, regulation, custom, or usage of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the. Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

835

defendants' acts were random and unauthorized and because the state afforded Irby adequate postdeprivation remedies. We affirm.

The issue before this court is whether Irby's complaint states a claim upon which relief can be granted. In determining whether a complaint should be dismissed, "the facts pleaded and all reasonable inferences from the pleadings are taken as true." *State v. American TV,* 146 Wis. 2d 292, 300, 430 N.W.2d 709 (1988). The legal sufficiency of the complaint, however, is a question of law which this court reviews without deference to the trial court or the court of appeals. *Ball v. District No. 4, Area Board,* 117 Wis. 2d 529, 537, 345 N.W.2d 389 (1984).

In September of 1988, while an inmate at the Wisconsin Resource Center (WRC), Irby was charged with several rule violations including attempted battery, making threats, and showing disrespect to prison employees. Wis. Admin. Code, secs. DOC 303.12, 303.16, and 303.25 respectively. The disciplinary committee at WRC met to consider these charges, and on September 29, 1988, determined that Irby committed the alleged violations.[2] Irby was sentenced to 8 days of adjustment segregation and 360 days of program segregation. He also suffered the loss of earned good-time credits.

Irby sought certiorari review of the disciplinary proceedings in the Dane County Circuit Court, asserting that the disciplinary committee failed to observe

---

[2] At the time of Irby's alleged rule violations, the disciplinary committee at WRC consisted of defendants Julson, Klemz and Warner. Defendant Macht was the Superintendent at WRC. Defendant Whitley was a social worker at WRC and Irby's appointed advocate during the disciplinary proceedings.

the procedures mandated in the Wisconsin Administrative Code. The circuit court agreed and ordered that a second disciplinary hearing take place. At this rehearing, the disciplinary committee once again found Irby guilty.

Rather than petitioning the circuit court for certiorari review of the second disciplinary hearing, Irby initiated this sec. 1983 action. His complaint accuses the defendants of depriving him of constitutionally-protected liberty interests without due process of law. He is requesting money damages, costs, and the expungement of his prison record.

In October of 1990, the circuit court granted defendants' motion to dismiss for failure to state a claim. The court of appeals affirmed, holding that Irby was required to exhaust his administrative remedies prior to bringing a sec. 1983 action.

This court held Irby's petition for review in abeyance pending our decision in *Casteel v. Vaade,* 167 Wis. 2d 1, 481 N.W.2d 476 (1992). In *Casteel,* we concluded that plaintiffs need not exhaust their administrative remedies prior to initiating a sec. 1983 action in state court. *Id.* at 17. Based on *Casteel,* we vacated the court of appeals' dismissal of Irby's complaint and remanded the matter back to that court for further proceedings. On remand, the court of appeals again affirmed the dismissal of Irby's sec. 1983 complaint. Relying upon the United States Supreme Court's analysis in *Zinermon v. Burch,* 494 U.S. 113 (1990), the court of appeals concluded that Irby had not been denied due process because the respondent's actions were "random and unauthorized rule violations," and because certiorari review provided Irby an adequate postdeprivation remedy.

As noted, Irby's sec. 1983 claim is grounded in his contention that he was deprived of protected liberty interests without due process of law. Accordingly, our first task is to determine whether Irby has in fact been deprived of a liberty interest protected by the Due Process Clause. Irby argues that retention of his earned good-time credits, as well as his right to remain in the general prison population rather than being placed in segregation, are both protected liberty interests. We agree.

In *Wolff v. McDonnell,* 418 U.S. 539 (1974), the Supreme Court concluded that the Due Process Clause in and of itself does not require states to provide inmates with good-time credits. *Id.* at 557. Furthermore, merely creating good-time credits does not oblige a state to provide inmates due process before such credits can be taken away. However, when states create the right to good-time, and then further condition its loss only upon proof of major misconduct, prisoners acquire a protected liberty interest. Thus, with respect to the Nebraska statutes at issue in *Wolff,* the Court concluded:

> Since prisoners in Nebraska can only lose good-time credits if they are guilty of serious misconduct, the determination of whether such behavior has occurred becomes critical, and the minimum requirements of procedural due process appropriate for the circumstances must be observed.

*Id.* at 558.

The state concedes that the applicable Wisconsin regulations create a protected liberty interest in the retention of earned good time. The Wisconsin Adminis-

trative Code, sec. DOC 303.68 defines the loss of good time as a "major penalty," which can be imposed only when the inmate has been found guilty of a disciplinary rule. In addition, DOC 303.84 establishes the maximum amount by which an inmate's good time can be reduced for each type of violation. Under the reasoning expressed in *Wolff,* Irby has a protected liberty interest in the retention of his earned good-time credits.

The more disputed issue is whether he also has a liberty interest in remaining in the general prison population rather than being placed in segregation. The state maintains that Irby has no such interest, citing *Meacham v. Fano,* 427 U.S. 215 (1976).

The question in *Meacham* was whether an inmate in a Massachusetts state prison was deprived of a protected liberty interest when officials transferred him to a less favorable institution. As it did in *Wolff,* the Court in *Meacham* stressed the severely limited nature of a prisoner's liberty interests:

> [G]iven a valid conviction, the criminal defendant has been constitutionally deprived of his liberty to the extent that the State may confine him and subject him to the rules of its prison system so long as the conditions of confinement do not otherwise violate the Constitution.

*Id.* at 224. As a result, the Court concluded that the Due Process Clause in and of itself does not protect an inmate's interest in being free from prison-to-prison transfers, even if "life in one prison is much more disagreeable than in another . . .." *Id.* at 225.

The state would have us take from *Meacham* the proposition that given a valid conviction, prisoners automatically forfeit their liberty interests with respect to the conditions of their incarceration,

whether that be transfer to a less desirable institution, or, as in Irby's case, placement in segregation.

The state's interpretation, however, fails to acknowledge that in *Meacham,* the Court noted that unlike the Nebraska statutes in *Wolff,* Massachusetts law did not confer upon prisoners the right to remain in the prison to which they were initially assigned:

> Insofar as we are advised, transfers between Massachusetts prisons are not conditioned upon the occurrence of specified events. On the contrary, transfer in a wide variety of circumstances is vested in prison officials. *The predicate for invoking the protection of the Fourteenth Amendment as construed and applied in Wolff is totally nonexistent in this case.* (Emphasis added.)

*Meacham,* 427 U.S. at 226–27.

Any uncertainty which may have existed in this area was resolved in *Hewitt v. Helms,* 459 U.S. 460 (1983). The issue in *Hewitt* was whether inmates in Pennsylvania state prisons had a liberty interest in not being placed in administrative segregation. In concluding that the Due Process Clause itself does not protect such an interest, the Court reiterated its view that "one cannot automatically apply procedural rules designed for free citizens in an open society . . . to the very different situation presented by a disciplinary proceeding in a state prison." *Id.* at 472, *quoting Wolff,* 418 U.S. at 560. In addition, the Court believed that administrative segregation was the type of confinement that inmates should "reasonably anticipate" during their incarceration. *Id.* at 468.

Nevertheless, the Court concluded that Pennsylvania's statutes and regulations gave inmates a protected liberty interest in remaining in the general

prison population. First, the regulations required that certain due process procedures "shall," "will," and "must," be complied with before an inmate could be placed in segregation. *Id.* at 471–72. Second, administrative segregation could only be imposed if specified "substantive predicates" existed, for example "the need for control," or "the threat of a serious disturbance." *Id.* at 472. The Court concluded:

> [O]n balance we are persuaded that the repeated use of explicitly mandatory language in connection with requiring specific substantive predicates demands a conclusion that the State has created a protected liberty interest.

*Id.* at 472. See also, *Kentucky Dep't of Corrections v. Thompson,* 490 U.S. 454, 462 (1989) ("a State creates a protected liberty interest by placing substantive limitations on official discretion").

■

The reasoning expressed in these cases leads us to conclude that Irby's interest in not being placed in adjustment and/or program segregation is constitutionally protected. The administrative regulations governing prison disciplinary matters classify both adjustment segregation and program segregation as "major penalties" which can only be imposed for violation of a "major offense."[3] In addition, that chapter also lists procedures which *must* be complied with before inmates can be found guilty of a major offense. For instance, the prisoner must be given prior notice of the disciplinary hearing,[4] the prisoner has the limited right to call witnesses,[5] and the prisoner must be pro-

---

[3] Wisconsin Admin. Code, secs. DOC 303.69 and 303.70.
[4] Wis. Admin. Code, secs. DOC 303.76(1) and 303.81(9).
[5] DOC 303.81(1)–(8).

vided a written copy of the disciplinary committee's decision,[6] including the basis for its decision.[7] Because adjustment and program segregation can only be imposed for "major violations," and because administrative regulations utilize mandatory language to describe the process which must be accorded prisoners, we believe Wisconsin has given Irby a liberty interest in remaining in the general prison population, and free from adjustment or program segregation.[8]

The fact that Irby has been deprived of a protected liberty interest does not, however, mean that his constitutional rights have been violated. The Due Process Clause does not prevent states from depriving persons of their life, liberty or property. Rather, the Clause protects only against those deprivations which occur "without due process of law." *Parratt v. Taylor,* 451 U.S. 527, 537 (1981). We must therefore determine whether Irby was accorded due process in this instance.

---

[6] DOC 303.76(6).

[7] See Appendix Note to DOC 303.76(5), p. 114.

[8] In these respects, the regulations pertaining to placement in adjustment and program segregation are quite unlike those at issue in *Casteel v. McCaughtry,* 176 Wis. 2d 571, 500 N.W.2d 277 (1993). In *Casteel,* the question was whether inmates had a protected liberty interest in not being placed in temporary lockup. The pertinent DOC regulations did not require that inmates be found guilty of a "major offense" before being placed in temporary lockup. Rather, DOC 303.11(4) allowed placement in temporary lockup if officials believed it "more likely than not" that the necessary preconditions existed. *Id.* at 583–84. We determined those regulations did not create a protected liberty interest because they did not place "substantive limitations on official discretion." *Id.* at 584.

■ Generally, due process requires that notice and an opportunity to be heard be provided before a constitutional deprivation occurs.[9] The purpose of this requirement obviously is to prevent wrongful deprivations before they occur.

■ The Supreme Court has recognized, however, that when the deprivation results from the "random and unauthorized" acts of state employees, providing meaningful predeprivation process is impracticable. *Parratt,* 451 U.S. at 543–44; *Hudson v. Palmer,* 468 U.S. 517, 533 (1984); *Zinermon v. Burch,* 494 U.S. 113, 128–29 (1990). Because the state cannot predict when such acts will occur, the Court has held that due process will still be satisfied provided the state makes available adequate postdeprivation remedies. *Parratt,* 451 U.S. at 544.

Thus, in *Parratt,* the Supreme Court held that it was "difficult to conceive" how the state could have provided a meaningful hearing before its employees negligently misplaced an inmate's mail-order hobby materials. *Id.* at 541. As a result, the Court concluded that the tort remedy provided by the state satisfied due process because it offered the inmate an adequate postdeprivation remedy. *Id.* at 544.

In *Hudson,* prison employees destroyed an inmate's personal property during the course of a "shakedown" search. *Hudson,* 468 U.S. at 520. Although the deprivation in *Hudson* resulted from the employees' *intentional* rather than *negligent* actions,

---

[9] For a list of United States Supreme Court cases discussing the general due process requirement that states provide some form of notice and opportunity to be heard *before* a deprivation occurs, see *Zinermon v. Burch,* 494 U.S. 113, 127–28 (1990).

the Court believed that the underlying rationale of *Parratt* applied just the same:

> Whether an individual employee himself is able to foresee a deprivation is simply of no consequence. The controlling inquiry is solely whether the state is in a position to provide for predeprivation process.

*Hudson,* 468 U.S. at 534. Finding that the state can no more anticipate the random and unauthorized intentional conduct of its employees than it can similar negligent conduct, *Id.* at 533, the Court concluded that the postdeprivation common-law remedies available to the inmate provided due process.

A more recent explication of the *"Parratt"* rule is found in *Zinermon.* The plaintiff in *Zinermon* accused various physicians, administrators, and staff members of a Florida State hospital of depriving him of his liberty without due process by admitting him as a "voluntary" mental patient even though he was not competent to give informed consent to his admission. *Zinermon,* 494 U.S. at 114–15. The defendants argued that the only reason the plaintiff had not been afforded predeprivation due process was because they, the defendants, randomly and without authorization failed to observe the state regulations governing voluntary admissions. *Id.* at 130. In other words, the *Zinermon* defendants argued that, as was true in *Parratt* and *Hudson,* additional predeprivation procedures would have been impracticable because the state could not have anticipated these random and unauthorized acts.

The Supreme Court disagreed. Reviewing the pertinent Florida regulations, the Court found that all a person needed to do to be voluntarily admitted to a state mental health facility was to sign an admission form. *Id.* at 134. The regulations did not establish any

type of procedure requiring staff members to confirm that the applicant was in fact competent to give the "express and informed consent" required for voluntary placement. *Id.* at 135.

Given these facts, the Court held that Florida's failure to mandate adequate predeprivation procedures effectively delegated to the defendants broad discretion to admit patients on a "voluntary" basis without having to confirm their competency. As a result, the fact that an incompetent person was "voluntarily" admitted was neither unpredictable, unamenable to predeprivation procedures, nor unauthorized. *Id.* at 136–38. The defendants were not acting randomly or without authority. On the contrary, the statutes in question delegated to the defendants the ability to do precisely what they did, i.e., admit the plaintiff without first confirming his competency.

Irby believes that the Wisconsin regulations governing disciplinary hearings are comparable to those in *Zinermon,* and that the defendants' conduct in this case was not random and unauthorized. We disagree. Unlike the broad delegation of discretion apparent in *Zinermon,* the DOC regulations in this case severely limit the discretionary authority of prison officials. Those regulations explicitly and at great length spell out the procedures inmates *must* be afforded with respect to disciplinary hearings. For instance, inmates must be given notice of the hearing's time,[10] the nature of the charges against them,[11] and the penalties they face.[12] In addition, inmates have a limited right to call witnesses,[13] the right to an advocate's assistance in

[10] Wis. Admin. Code, sec DOC 303.81(9).
[11] DOC 303.76(1).
[12] *Id.*
[13] DOC 303.81(1)–(8).

845

preparing and presenting a defense, including the gathering of evidence and testimony,[14] the right to have a different advocate selected if the assigned advocate has a known and demonstrated conflict of interest,[15] the right to be found guilty by a preponderance of the evidence,[16] the right to know the basis for the committee's decision,[17] and the right to appeal the initial decision to the superintendent.[18]

Irby alleges that the defendants failed to observe a number of these requirements. For instance, he claims that he did not receive prior notice of the disciplinary hearing, that the committee did not provide him with the reasons for its decision, that he was not allowed to call the witnesses he desired, and that defendant Whitley was imposed as his advocate despite Whitley's conflicts of interests.

As the preceding paragraph indicates, the defendants did not have the authority to deprive Irby of any of these procedural rights. See, *Duenas v. Nagle*, 765 F. Supp. 1393, 1399 (W.D. Wis. 1991) ("In contrast [to the regulations in *Zinermon*] Wisconsin established comprehensive disciplinary procedures strictly limiting prison staff discretion.") and *Scott v. McCaughtry*, 810 F. Supp. 1015, 1019 (E.D. Wis. 1992) ("The Wisconsin system, unlike the situation in *Zinermon v. Burch*, does not vest such broad discretion to the defendants that it would be predictable that errors of the type complained of by plaintiff would occur."). As a result, we agree with

---

[14] DOC 303.78(1)(b) and 303.78(2).

[15] DOC 303.78(1)(c).

[16] DOC 303.76(6).

[17] DOC 303.76(6) and Appendix Note to DOC 303.76(5), p. 114.

[18] DOC 303.76(7).

the court of appeals' conclusion that the defendants' acts in this case were random and unauthorized.[19]

Our final inquiry, then, is to determine whether the postdeprivation remedies offered by the state are adequate. If those remedies are deemed adequate, Irby will have received the process he is due.

Irby does not seriously dispute the adequacy of the state's postdeprivation remedies in regards to his earned good time. On certiorari review, the circuit court can order the restoration of any lost good time. The court can also expunge the inmate's disciplinary record. In addition, should the wrongly forfeited good time exceed the length remaining on the prisoner's sentence, the prisoner can pursue a tort action for false imprisonment. *Cf. Lemke v. Anders,* 261 Wis. 555 53 N.W.2d 436 (1952). These remedies adequately compensate inmates for wrongful deprivations of earned good time.

We also believe that the state offers Irby an adequate postdeprivation remedy for his allegedly wrongful placement in segregation. In reaching that conclusion, we are guided by the fact that postdeprivation remedies will be deemed adequate unless they can "readily be characterized as inadequate to the point that [they are] meaningless or nonexistent . . .." *Scott v. McCaughtry,* 810 F. Supp. 1015, 1019 (E.D. Wis. 1992), *quoting, Easter House v. Felder,* 910 F.2d 1387, 1406

---

[19] *See also, Easter House v. Felder,* 910 F.2d 1387, 1404 (7th Cir. 1990), holding that sec. 1983:

should not be employed to remedy deprivations which occur at the hands of a state employee who is acting in direct contravention of the state's established policies and procedures which have been designed to guarantee the very protections which the *employee* now has chosen to ignore. (Emphasis in original.)

(7th Cir. 1990). We also note that the adequacy of postdeprivation remedies must be measured by the nature of the alleged unauthorized deprivation. *New Burnham Prairie Homes, Inc. v. Village of Burnham,* 910 F.2d 1474, 1480 (7th Cir. 1990).

In *Hewitt,* the Supreme Court discussed the relatively limited liberty interest inmates have in remaining free from segregation. In that case, the Court characterized the liberty interests at stake in parole and good-time decisions as far more significant than the prisoner's "minor" interest in not being placed in administrative segregation. *Hewitt,* 459 U.S. 470. This is because whereas parole and good time directly impact the inmate's release from incarceration, placement in administrative segregation is the type of confinement inmates should reasonably anticipate given a valid conviction.[20]

Given the limited deprivation occasioned by placement in segregation, we conclude that the postdeprivation remedies offered by the state are adequate. This is best evinced, we believe, by what transpired in this case. Following the initial disciplinary hearing, Irby petitioned the circuit court for certiorari review, alleging various due process violations. The circuit court agreed with Irby's contentions

---

[20] *Hewitt* dealt with the imposition of "administrative" rather than "disciplinary" segregation. Although Irby's segregation is disciplinary in nature, we do not think this distinction is significant. In *Hewitt,* the Pennsylvania statutes established two basic types of segregation, "administrative" and "disciplinary." Nevertheless, the court assumed for the purposes of its opinion that the conditions in the two types of confinement were substantially identical. *Hewitt,* 459 U.S. at 463 n.3.

and ordered that a second hearing take place.[21] When the commission allegedly failed a second time to follow the mandated procedural rules, Irby once again had the option of challenging its decision with a petition for certiorari review. The fact that Irby chose not to petition for certiorari review does not, in our opinion, indicate that option's inadequacy.[22]

Several recent federal district court decisions lend support to the conclusion we draw today. In *Duenas v. Nagle*, 765 F. Supp. 1393 (W.D. Wis. 1991), the plaintiff, an inmate at the Columbia Correctional Institute in Portage, Wisconsin, brought a sec. 1983 suit against prison officials stemming from his placement in solitary confinement and segregation. As did Irby, the plaintiff in *Duenas* accused the defendants of depriving him of procedural due process by failing to adhere to the procedures mandated in the Wisconsin Administrative Code. His complaint alleged that because of the defendants' actions, he suffered anxiety and mental

---

[21] We believe these facts also dispel Irby's various assertions that certiorari review is procedurally inadequate. Obviously, none of those alleged inadequacies (e.g., the circuit court's deferential standard of review on certiorari, and the limited nature of the record generated by prison disciplinary hearings) prevented the circuit court in this case from determining that the first disciplinary hearing was flawed.

[22] The dissenting opinion states that certiorari review is an inadequate postdeprivation remedy. The dissenting opinion fails to mention that Irby deliberately forsook certiorari review after the second disciplinary hearing. Presumably, if he had exercised this option, the circuit court once again would have ordered a new hearing be held, thereby allowing prison officials the opportunity to follow the procedures mandated by the Wisconsin Administrative Code. If Irby had availed himself of the postdeprivation remedy provided him by the state, there may very well have been no need for this sec. 1983 litigation.

distress, the loss of wages, the lost companionship of family and friends, and placement in federal custody as an INS detainee. *Id.* at 1396.

After first determining that the defendants' acts were "random and unauthorized" per *Parratt, Id.* at 1398, the district court went on to hold that the Inmate Complaint Review System and certiorari review provided the prisoner with adequate postdeprivation remedies:

> The scope of review on certiorari extends to whether the administrative action in question violated guarantees of due process found in both the federal and state constitutions. *Krison v. Nehls,* 767 F.2d 344 (7th Cir. 1985). Certiorari review also encompasses assertions that a prison adjustment committee failed to follow its own rules governing the conduct of hearings. *State v. ex rel Meeks,* 95 Wis. 2d at 119, 289 N.W.2d 357.

*Duenas,* 765 F. Supp. at 1400. Given these remedies, which included the expungement of the inmate's disciplinary record, the court did not believe that the inability to receive money damages rendered certiorari review an inadequate remedy. "The fact that an injured party 'might not be able to recover . . . the full amount which he might receive in a sec. 1983 action is not . . . determinative of the adequacy of the state remedy.' " *Id.,* quoting *Easter House,* 910 F.2d at 1406.[23]

We agree with the court's reasoning in *Duenas.* Given the limited deprivation occasioned by placement in segregation, we find that the Inmate Complaint Sys-

---

[23] For a virtually identical analysis to that presented in *Duenas, see Scott v. McCaughtry,* 810 F. Supp. 1015 (E.D. Wis. 1992).

tem, coupled with certiorari review, provide inmates such as Irby adequate post-deprivation remedies. These remedies guarantee that procedural errors of the type Irby alleges will be quickly and fairly addressed, and that when appropriate, the disciplinary committee's decision will be overturned and the inmate's record expunged. We do not believe these remedies are "meaningless" simply because they do not afford inmates an opportunity to receive money damages.

In conclusion, we hold that the defendants were acting in a random and unauthorized manner when they failed to accord Irby the process mandated by the Wisconsin Administrative Code. Because the state has provided adequate postdeprivation remedies, we conclude that under *Parratt* and its progeny, Irby has not been deprived of due process.

*By the Court.*—The decision of the court of appeals is affirmed.

SHIRLEY S. ABRAHAMSON, J. *(dissenting).* I agree with the majority opinion insofar as it holds that the petitioner has a constitutionally protected liberty interest in remaining in the general prison population, as well as in retention of his earned good-time credits. I dissent from the majority opinion because I conclude that the petitioner's claim that he was deprived of liberty without due process of law is cognizable under 42 U.S.C. sec. 1983.

As the majority opinion explains, not all deprivations of liberty violate the Fourteenth Amendment to the federal Constitution. A claim under sec. 1983 requires an allegation that state officials deprived the plaintiff of life, liberty or property without due process of law. .

This case appears to involve procedural rather than substantive due process. To determine whether a plaintiff alleges a procedural due process violation, courts use the two-part analytical framework set forth in *Parratt v. Taylor,* 451 U.S. 527 (1981). First, such a violation has been alleged and sec. 1983 is available if the court determines that the challenged conduct is not "random and unauthorized," *Parratt,* 451 U.S. at 541, or is undertaken pursuant to an established state procedure. Second, even if the conduct is considered "random and unauthorized" and is not engaged in pursuant to established procedure, the challenged conduct nevertheless gives rise to a sec. 1983 claim if state law does not provide an adequate post-deprivation remedy. *Parratt* has been a very difficult decision to decipher and apply.[1]

The majority opinion holds that the challenged conduct in the case at bar is "random and unauthorized" and that common law certiorari review of the prison disciplinary board's decision constitutes an adequate remedy for the petitioner's allegedly wrongful disciplinary placement in segregation. I disagree on both counts.

## I.

Contrary to the impression that may be created by the majority's cut-and-dried approach to the first step in the *Parratt* analysis, this case raises squarely the central problem left in the wake of *Zinermon v. Burch,* 494 U.S. 113 (1990). When a state has established pre-deprivation procedures that on their face pass constitu-

---

[1] *See* David Zensky, *Parratt v. Taylor: Unauthorized Deprivations and the Content of An Adequate Remedy,* 16 N.Y.U. Rev. L. & Soc. Change 161, 163 (1987–88).

tional muster, how are courts to classify allegations that the state officials responsible for implementing the procedures have failed to do so?

Perhaps, as the majority suggests (Majority opinion at 845–846), the challenged conduct is "random and unauthorized" by definition because the allegations indicate that officials violated established procedures. On the other hand, for other courts and commentators, it makes little sense to argue that the constitution requires the establishment of pre-deprivation procedures but does not require state officials to follow them.

Both of these viewpoints find support in *Zinermon* and in the cases that have interpreted it. *Parratt* and *Zinermon* evince the Court's apprehension of making the Fourteenth Amendment a "font of tort law"[2] and the Justices' disagreements in sec. 1983 actions about such concerns as federalism, federal court burdens, overburdening officials, and trivializing constitutional rights.[3]

As Judge Easterbrook correctly observes in his concurrence in *Easter House v. Felder,* 910 F.2d 1387, 1408 (7th Cir. 1990), *cert. denied,* 498 U.S. 1067 (1991), the Supreme Court has been inconsistent in its approach to procedural due process violations and sec. 1983, and "hair-splitting" among the justices puts the federal courts of appeal and state high courts in a difficult position. *Easter House,* 910 F.2d 1387, 1408 (Easterbrook, J. concurring).

The Seventh Circuit, sitting *en banc,* divided over this question in *Easter House v. Felder,* 910 F.2d 1387, 1408 (7th Cir. 1990) (Easterbrook, J. concurring; Cudahy, Cummings and Posner, JJ. dissenting). Fed-

---

[2] *Parratt,* 451 U.S. at 549–50 (Powell, J. concurring).

[3] *See* Sheldon H. Nahmod, 1 *Civil Rights and Liberties Litigation* 180–181 (3d ed. 1991).

eral district courts in Wisconsin have reached opposite conclusions about sec. 1983 claims brought by prisoners challenging disciplinary proceedings. *See Duenas v. Nagle,* 765 F. Supp. 1393, 1398 (W.D. Wis. 1991) ("defendants' noncompliance with established state procedures can only be characterized as random and unauthorized conduct."); *Smith v. McDaughtry,* 801 F. Supp. 239, 242–43 (E.D. Wis. 1992) (alleged violations of Wisconsin prison disciplinary procedure not "random and unauthorized" conduct).

While a majority of the *en banc* Fifth Circuit apparently considers *Zinermon* a "wrinkle" on the *Parratt* doctrine,[4] the dissenting judges characterized it as a "strong and sweeping addition" to the doctrine. *Caine,* 943 F.2d at 1418 (Williams, J. dissenting).[5]

My own reading of *Zinermon* suggests that the majority misses the point. Although it is true that Florida did not have pre-deprivation procedures to prevent the loss of liberty at issue in *Zinermon,* the state mental hospital employees nevertheless were alleged to have violated state law concerning the "voluntary" admission of an incompetent patient. The Court pointed out that "[i]t is immaterial whether the due process violation Burch alleges is best described as arising from petitioners' failure to comply with state procedures for admitting involuntary patients, or from the absence of a specific requirement that petitioners determine whether a patient is competent to consent to voluntary admission." *Zinermon,* 494 U.S. at 135–136. The officials had a duty "to ensure that the proper

---

[4] *Caine v. Hardy,* 943 F.2d 1406, 1416 (5th Cir. 1991), *cert. denied,* — U.S. —, 112 S. Ct. 1474 (1992).

[5] For discussion of other cases, *see* Sheldon H. Nahmod, 1 *Civil Rights and Liberties Litigation* 188–194 (3d ed. 1991).

procedures were followed[.]" *Zinermon,* 494 U.S. at 137.

The case at bar is analogous to *Zinermon* in that the deprivation at issue "is 'unauthorized' only in the sense that it was not an act sanctioned by state law, but, was a deprivation of constitutional rights by an official's abuse of his position." *Zinermon,* 494 U.S. at 138 (citations omitted). It seems to me that *Zinermon* stands not only for the proposition that the Due Process Clause requires pre-deprivation procedures wherever feasible, but also for the proposition that officials are not shielded from sec. 1983 liability when they fail to implement such procedures. As in *Zinermon,* the state has delegated to the officials in this case the power and authority to effect the deprivation complained of and the concomitant duty to implement the procedural safeguards established by law.

I agree with Judge Easterbrook that *Parratt* and *Zinermon,* each of which produced several opinions in the United States Supreme Court, do not coexist easily. Judges around the country have differed in the interpretation and application of these cases. Recognizing the difficulty of reconciling the cases, I conclude that the challenged conduct in the case at bar is not "random and unauthorized."

## II.

If, however, the majority's narrow interpretation of *Zinermon* is correct and the alleged violations of the Department's regulations were "random and unauthorized," I must consider whether Wisconsin law provides an adequate remedy. The adequacy standard advances the goals of federalism. By providing adequate post-deprivation remedies, states can avoid federal disrup-

tion of their legal systems, and at the same time the purpose of sec. 1983 is accomplished.

The majority's perfunctory discussion fails to note, however, that federal jurisprudence offers few clues to solving this part of what one commentator refers to as the "*Parratt* puzzle."[6] Courts disagree about what is required of a state remedy for it to be characterized as adequate.

The majority makes a novel attempt at a solution. The majority asserts that because the petitioner has allegedly suffered a "limited" deprivation of liberty by being placed in segregation for 368 days, he is not entitled to money damages no matter how egregiously his constitutional rights may have been violated. Thus certiorari review provides an adequate state remedy. Majority opinion at 848. The majority cites no authority for forging a connection between the seriousness of the deprivation at issue and the adequacy of the post-deprivation remedy.[7] It seems to me that these are two separate issues. Once we have determined that the petitioner alleges a deprivation of a liberty interest, we must determine whether common law certiorari can make him whole.

The courts have imbued the adequacy prong of the *Parratt* analysis with flexibility. The burden to prove inadequacy is on the plaintiff. Some form of redress under state law is generally available. When, however, the state offers relief too qualitatively different from that provided under sec. 1983 to grant complete

---

[6] Steven H. Steinglass, *Section 1983 Litigation in State Courts* (1993), 3–26.23.

[7] The majority cites *Duenas v. Nagle,* 765 F. Supp. 1393, 1400 (W.D. Wis. 1991) for authority on the adequacy of certiorari review. The court dealt with this issue briefly, largely because the plaintiff did not argue it.

redress, or when it is not clear that state law is able to compensate the plaintiff, courts struggle to assess the adequacy of the state law remedy. *See* David Zensky, *Parratt v. Taylor,* 16 N.Y.U. Rev. L. & Soc. Change 161, 184–85, 191, 195–201 (1987–88).

Congruence between remedies available under sec. 1983 and those available under state law is not required. *Parratt,* 451 U.S. at 544. Nonetheless, I conclude that *Parratt* requires a determination whether the available state process remedies the essential aspects of the interests at stake. *Rutherford v. United States,* 702 F.2d 580, 582–83 (5th Cir. 1983). In other words, there must be a congruity between the interests at issue and the remedies available. A court should consider the nature of the injury suffered and the interest involved to determine what forms of relief are essential for meaningful redress for a particular plaintiff.

On the few occasions when the federal circuit courts have explored the adequacy of state remedies at length, the cases turn on the capacity of state law to provide redress to the plaintiff for the particular deprivation claimed. As one court put it, "remedies not responsive to the range of intangible interests are not meaningful in the analysis of the adequacy of the process provided." *Rutherford v. United States,* 702 F.2d 580, 583 (5th Cir. 1983) (refund process not adequate remedy where plaintiff seeks compensation for IRS agent's harassment). *See also Bumgarner v. Bloodworth,* 738 F.2d 966, 968 (8th Cir. 1984) (state remedy deemed inadequate because it provided damages, not return of property with sentimental value); *Parrett v. City of Connersville,* 737 F.2d 690, 697 (7th Cir. 1984) (grievance procedure unable to award financial com-

pensation deemed inadequate to compensate police officer who was deprived of job without due process).[8]

The question is whether Wisconsin's common law certiorari review provides relief essential for redress of the petitioner's loss of liberty associated with his allegedly wrongful placement in disciplinary segregation. The petitioner argues that certiorari is inadequate for the reasons Judge Sundby set forth in his dissent in *Casteel v. Kolb,* 176 Wis. 2d 440, 450, 500 N.W.2d 400 (Ct. App. 1992) (Sundby, J. dissenting). Judge Sundby wrote that "the defects of certiorari as a remedy for deprivation of constitutional rights are manifold." *Id.* at 453. Certiorari has a period of limitation of just six months. *Firemen's Annuity and Benefits Fund v. Krueger,* 24 Wis. 2d 200, 205, 128 N.W.2d 670 (1964). The reviewing court may not consider matters outside the administrative record, *Berschens v. Town of Prairie du Sac,* 76 Wis. 2d 115, 118–19, 250 N.W.2d 369 (1977), a particularly serious limitation in the context of prison disciplinary hearings in which the hearings are not recorded and the record may be incomplete. The scope of certiorari review is limited. *Coleman v. Percy,* 96 Wis. 2d 578, 588–89, 292 N.W.2d 118, 121 (1980). Last, and most important, certiorari review does not permit the award of damages. *Coleman v. Percy,* 86 Wis. 2d 336, 341, 272 N.W.2d 118 (Ct. App. 1978), *aff'd,* 96 Wis.

---

[8] Other courts have deemed effective denial of access to court an inadequate state remedy. *See, eg., Freeman v. Department of Corrections,* 949 F.2d 360 (10th Cir. 1991) (although state law allowed suit by inmates, because court never responded to plaintiff, state remedy was effectively denied to him); *Holman v. Hilton,* 712 F.2d 854 (3rd Cir. 1983) (statute enabling prisoners to recover for deprivations after their release deemed inadequate because not long term inmates had no opportunity to sue).

2d 578, 292 N.W.2d 615 (1980). Expungement of the petitioner's record is the redress that the petitioner can expect from the state law remedy.

The federal district courts in Wisconsin have divided over whether certiorari review constitutes an adequate remedy for violations such as those alleged here. The majority relies primarily on *Duenas v. Nagle,* 765 F. Supp. 1393, 1400 (W.D. Wis. 1991), in which the plaintiff did not raise the adequacy issue. *Duenas* was followed in *Scott v. McCaughtry,* 810 F. Supp. 1015 (E.D. Wis. 1992). In *Sturdevant v. Haferman,* 798 F. Supp. 536, 540 (E.D. Wis. 1992), the court held that even under *Easter House*'s extremely deferential standard of the adequacy of the state remedy, "the Wisconsin writ of certiorari is a constitutionally inadequate post-deprivation remedy," because it could not provide for redress of the inmate's allegedly wrongful placement in segregation. *Sturdevant,* 798 F. Supp. at 540–41. Thus, the court said, Wisconsin's certiorari review is "meaningless." *Sturdevant,* 798 F. Supp. at 541. *Accord, Smith v. McCaughtry,* 801 F. Supp. 239 (E.D. Wis. 1992) (adopting *Sturdevant,* not *Duenas).*

The petitioner in this case claims that he was unconstitutionally deprived of 368 days of the relative freedom of being part of the general prison population. It is difficult to redress an intangible loss such as liberty. This is why the availability of money damages is crucial to an adequate remedy.

I disagree with the majority's determination that the petitioner's modicum of liberty is so valueless that a state remedy incapable of compensating the petitioner for its loss is "adequate" under the constitution. For the reasons set forth, I dissent.