Connie COLLINS, Plaintiff-Appellant,†

v.

CITY OF KENOSHA HOUSING AUTHORITY and
City of Kenosha Housing Authority Board of
Commissioners, Defendants-Respondents.

Court of Appeals

*No. 2009AP1656. Submitted on briefs March 8, 2010.
—Decided July 21, 2010.*

2010 WI App 110

(Also reported in 789 N.W.2d 342.)

† Petition for review denied 1-11-2011.

On behalf of the plaintiff-appellant, the cause was submitted on the briefs of *Jeffery R. Myer, Gai A. Lorenzen*, and *Leon W. Todd* of *Legal Action of Wisconsin, Inc.*, Racine.

On behalf of the defendants-respondents, the cause was submitted on the brief of *Matthew A. Knight* of *Office of the City Attorney*, Kenosha.

Before Neubauer, P.J., Anderson and Snyder, JJ.

¶ 1. ANDERSON, J.   After the City of Kenosha Housing Authority (KHA) upheld the termination of Connie Collins' federally funded rent assistance, is she able to state a 42 U.S.C. § 1983 claim of deprivation of procedural due process without first seeking redress under the state-provided remedy? The circuit court answered no and we agree. We affirm.

¶ 2.   Collins was a participant in the federally funded Section 8 Housing Choice Voucher Program. The KHA issued a letter to Collins dated April 12, 2005, stating that her Section 8 voucher would be terminated effective May 31, 2005. The reason stated for the termination was her alleged "[f]ailure to be home for two inspections." Collins made a timely request for a hearing to appeal the termination. After a hearing on May 10, 2005, Collins received a letter from the KHA upholding the decision to terminate her Section 8 voucher. The letter, dated May 16, 2005, gave the following explanation for why the decision was reached:   "After careful consideration of your case, the fair hearing/informal review committee has decided to deny your appeal regarding your request for continued

assistance under the Section 8 Rent Assistance Program through the Kenosha Housing Authority for the following reasons: Failure to be home for 2 inspections." Collins never sought the state-provided remedy of certiorari review which she was allowed to "seek . . . within 30 days of receipt of the final determination." *See* WIS. STAT. § 68.13(1) (2007–08).[1]

¶ 3.    More than two years after the final determination denying her appeal, on December 5, 2007, Collins filed an action under 42 U.S.C. § 1983 against the KHA and the City of Kenosha Housing Authority Board of Commissioners seeking reinstatement of her Section 8 voucher and monetary relief. Collins alleged that the KHA's actions violated her rights guaranteed by the due process clause of the Fourteenth Amendment and federal regulations applicable to Section 8. The parties cross-moved for summary judgment on August 14, 2008. The court heard oral argument on the motions for summary judgment on October 21, 2008. In its April 21, 2009 decision and order, the circuit court granted summary judgment in favor of the KHA and the KHA Board and dismissed Collins' action on the merits. A final order was entered on May 11, 2009. Collins appeals this decision.

¶ 4.    We review decisions on summary judgment by applying the same methodology as the circuit court.

---

[1] WISCONSIN STAT. § 68.13 provides in pertinent part:

**Judicial review. (1)** Any party to a proceeding resulting in a final determination may seek review thereof by certiorari within 30 days of receipt of the final determination. The court may affirm or reverse the final determination, or remand to the decision maker for further proceedings consistent with the court's decision.

All references to the Wisconsin Statutes are to the 2007–08 version unless otherwise noted.

*M & I First Nat'l Bank v. Episcopal Homes, Mgmt., Inc.*, 195 Wis. 2d 485, 496, 536 N.W.2d 175 (Ct. App. 1995). That methodology has been recited often, and we need not repeat it here except to observe that summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Id.* at 496–97. In determining whether Collins' 42 U.S.C. § 1983 action should be dismissed, the facts pleaded and all reasonable inferences from the pleadings are taken as true. *Irby v. Macht*, 184 Wis. 2d 831, 836, 522 N.W.2d 9 (1994), *overruled on other grounds by Sandin v. Conner*, 515 U.S. 472 (1995). The legal sufficiency of the complaint, however, is a question of law which we review without deference to the circuit court. *Id.*

¶ 5.   On appeal, Collins contends that her case "is **all about** the **pre-deprivation process**." Collins then attempts, unsuccessfully, to align her case with those cases in which the courts have allowed 42 U.S.C. § 1983 procedural due process claims. Ultimately, Collins argues that because her alleged violation was a predeprivation violation, "[t]he selection of which of the various overlapping remedies to pursue was hers."[2] That is not the law.

█

¶ 6.   Generally, due process requires that notice and an opportunity to be heard be provided before a

---

[2] Collins maintains that her "various overlapping remedies" were such that she

> could have filed two actions. She could have sought relief available via certiorari, which may or may not have included a violation of due process rights, and sought monetary and injunctive relief in a separate action under [42 U.S.C.] § 1983 to enforce her federally protected due process right. She might, conceivably, even have given notice of her claim under Wis. Stat. § 893.81 and filed some civil action based on state law.

constitutional deprivation occurs; this is in order to prevent wrongful deprivations. *Irby*, 184 Wis. 2d at 843. However, the United States Supreme Court has recognized that when the deprivation results from the "random and unauthorized" acts of state employees, providing meaningful predeprivation process is impracticable. *See Parratt v. Taylor*, 451 U.S. 527, 541, 543–44 (1981), *overruled on other grounds by Daniels v. Williams*, 474 U.S. 327 (1986); *see also Hudson v. Palmer*, 468 U.S. 517, 533 (1984); *Zinermon v. Burch*, 494 U.S. 113, 128–29 (1990).

¶ 7.   The *Parratt* Court held that because the state cannot predict when such acts will occur, due process will still be satisfied provided the state makes available adequate postdeprivation remedies. *Parratt*, 451 U.S. at 541, 544. This has come to be known as the *Parratt* rule. *See Zinermon*, 494 U.S. at 116.

¶ 8.   A discussion of the facts of *Parratt* and its progeny will help to illustrate why Collins' situation is analogous to *Parratt*. In *Parratt*, jail employees misplaced an inmate's mail-order hobby materials. *Parratt*, 451 U.S. at 529. The Court held that it was "difficult to conceive" how the state could have provided a meaningful hearing before its employees negligently misplaced the inmate's hobby materials. *Id.* at 541. As a result, the Court concluded that the tort remedy provided by the state satisfied due process because it offered the inmate an adequate postdeprivation remedy. *Id.* at 544.

¶ 9.   In *Hudson*, a prison employee intentionally destroyed an inmate's personal property. *Hudson*, 468 U.S. at 520. The Court determined that the underlying rationale of *Parratt* applied, finding that the state can no more anticipate the random and unauthorized intentional conduct of its employees than it can similar negligent conduct. *Hudson*, 468 U.S. at 533. It held that

the proper inquiry under *Parratt* is "whether the *state* is in a position to provide for predeprivation process." *Hudson*, 468 U.S. at 534 (emphasis added).

¶ 10. Finally, in *Zinermon*, a more recent case examining the proper scope of the *Parratt* rule, the Court came to a different result, holding that the complaint was sufficient to state a claim under 42 U.S.C. § 1983 for violation of procedural due process rights. *Zinermon*, 494 U.S. at 116, 139. In *Zinermon*, Darrell Burch accused various staff members of a Florida state hospital of depriving him of his liberty without due process by admitting him as a "voluntary" mental health patient even though he was not competent to give informed consent to his admission. *Id.* at 114–15. The hospital staff argued that, as in *Parratt* and *Hudson*, the state could not possibly have provided predeprivation process to prevent the kind of "random, unauthorized," wrongful deprivation of liberty Burch alleged, so the postdeprivation remedies provided by Florida's statutory and common law necessarily are all the process Burch was due. *Zinermon*, 494 U.S. at 130.

¶ 11. The Court disagreed. The Court found that Florida chose to delegate to the hospital staff a *broad, uncircumscribed* power to admit patients, i.e., to effect what, in the absence of informed consent, is a substantial deprivation of liberty. *Id.* at 135–36. It reasoned that because the hospital staff had state authority to deprive persons of liberty, the Constitution imposed on them the state's concomitant duty to see that no deprivation occur without adequate procedural protections. *Id.* at 135. The Court went on to say that

> [i]t may be permissible constitutionally for a State to have a statutory scheme like Florida's, which gives state officials broad power and little guidance in admitting mental patients. But when those officials fail to

> provide constitutionally required procedural safe-
> guards to a person whom they deprive of liberty, the
> state officials cannot then escape liability by invoking
> *Parratt* and *Hudson*.

*Zinermon*, 494 U.S. at 135.

¶ 12.   The Court provided three basic reasons why
its decision in *Zinermon* was not controlled by *Parratt*
and *Hudson*. First, Burch's deprivation of liberty was not
unpredictable given that the regulations do not specify a
way to determine competency before a patient signs
consent to admit. *Zinermon*, 494 U.S. at 136. Thus, the
Court held:

> It is hardly unforeseeable that a person requesting
> treatment for mental illness might be incapable of
> informed consent, and that state officials with the
> power to admit patients might take their apparent
> willingness to be admitted at face value and not initiate
> involuntary placement procedures. Any erroneous dep-
> rivation will occur, if at all, at a specific, predictable
> point in the admission process—when a patient is given
> admission forms to sign.

*Id.* The situation differs, said the Court, from the state's
predicament in *Parratt* and *Hudson*. *Zinermon*, 494
U.S. at 136. In *Parratt*, "[w]hile [the State] could antici-
pate that prison employees would occasionally lose
property through negligence, it certainly "cannot pre-
dict precisely when the loss will occur." *Zinermon*, 494
U.S. at 136 (citing *Parratt*, 451 U.S. at 541). Likewise, in
*Hudson*, the state might be able to predict that guards
occasionally will harass or persecute prisoners they
dislike, but cannot "know when such deprivations will
occur." *Zinermon*, 494 U.S. at 136 (citing *Hudson*, 468
U.S. at 533).

805

¶ 13.  The second reason the *Zinermon* decision is not controlled by *Parratt* and *Hudson* is because the predeprivation process was not impossible, like it was in *Parratt* and *Hudson*. *Zinermon*, 494 U.S. at 136–37. Florida already had an established procedure for involuntary placement. *Id.* The problem was only to ensure that this procedure is afforded to all patients who cannot be admitted voluntarily, both those who are unwilling and those who are unable to give consent. *Id.* at 137.

¶ 14.  In *Parratt*, the very nature of the deprivation made the predeprivation process "impossible." *Zinermon*, 494 U.S. at 137 (citing *Parratt*, 451 U.S. at 541). It would do no good for the state to have a rule telling its employees not to lose mail by mistake, and "it borders on the absurd" to suggest that a state must provide a hearing to determine whether or not a corrections officer should engage in negligent conduct. *Zinermon*, 494 U.S. at 137. In *Hudson*, the errant employee himself could anticipate the deprivation since he intended to effect it, but the state still was not in a position to provide the predeprivation process, since it could not anticipate or control such random and unauthorized intentional conduct. *Zinermon*, 494 U.S. at 137. Again, "a rule forbidding a prison guard to maliciously destroy a prisoner's property would not have done any good; it would be absurd to suggest that the State hold a hearing to determine whether a guard should engage in such conduct." *Id.*

¶ 15.  The Court, in *Zinermon*, contrasted Burch's situation with that in *Parratt* and *Hudson*, explaining that there is nothing absurd in suggesting that, had the state limited and guided the hospital staff's power to admit patients, the deprivation might have been averted. *Zinermon*, 494 U.S. at 137. Burch's complaint

alleged that petitioners "knew or should have known" that he was incompetent, and nonetheless admitted him as a voluntary patient in "willful, wanton, and reckless disregard" of his constitutional rights. *Id.* Understood in context, the allegation means only that petitioners disregarded their duty to ensure that the proper procedures were followed, not that they, like the prison guard in *Hudson*, were bent upon effecting the substantive deprivation and would have done so despite any and all predeprivation safeguards. *Zinermon*, 494 U.S. at 137. Moreover, the Court opined, "[I]t would indeed be strange to allow state officials to escape [42 U.S.C.] § 1983 liability for failing to provide constitutionally required procedural protections by assuming that those procedures would be futile because the same state officials would find a way to subvert them." *Zinermon*, 494 U.S. at 137–38.

¶ 16. The third reason the *Zinermon* decision is not controlled by *Parratt* and *Hudson* is because the hospital staff cannot characterize their conduct as "unauthorized" in the sense the term is used in *Parratt* and *Hudson*. *Zinermon*, 494 U.S. at 138. The state delegated to the staff the power and authority to effect the very deprivation complained of by Burch, Burch's confinement in a mental hospital, and also delegated to them the concomitant duty to initiate the procedural safeguards set up by state law to guard against unlawful confinement. *Zinermon*, 494 U.S. at 138. In *Parratt* and *Hudson*, the state employees had no similar broad authority to deprive prisoners of their personal property and no similar duty to initiate (for persons unable to protect their own interests) the procedural safeguards required before deprivations occur. *Zinermon*, 494 U.S. at 138. The deprivation complained of by Burch is "unauthorized" only in the sense that it was

not an act sanctioned by state law but, instead, was a deprivation of constitutional rights by an official's abuse of his or her position. *Id.*

¶ 17. The Court concluded that the deprivation alleged was unlike that alleged in *Parratt* and *Hudson* where predeprivation safeguards to prevent the kind of deprivation alleged were impossible. *See Zinermon,* 494 U.S. at 139. The difference being that the nature of the deprivation possible under the regulations as written by Florida were foreseeable and predictable, making predeprivation safeguards possible. *See id.* Thus, the Court held that Burch's complaint was sufficient to state a claim under 42 U.S.C. § 1983 for violation of his procedural due process rights. *Zinermon,* 494 U.S. at 139.

¶ 18. Our Wisconsin Supreme Court carefully analyzed these precedents in *Irby,* a decision published four years after *Zinermon.* We consider *Irby* on point. Leon Irby, while an inmate at the Wisconsin Resource Center (WRC), was charged with several department of corrections (DOC) rule violations. *Irby,* 184 Wis. 2d 835–36. The disciplinary committee at WRC met to consider these charges and determined that Irby committed the alleged violations. *Id.* at 836. Irby was sentenced to eight days of adjustment segregation and 360 days of program segregation. *Id.* He also lost earned good-time credits. *Id.*

¶ 19. Irby sought certiorari review of the disciplinary proceedings in the Dane County Circuit Court, asserting that the disciplinary committee failed to observe the procedures mandated in the Wisconsin Administrative Code. *Id.* at 836–37. The circuit court agreed and ordered that a second disciplinary hearing take place. *Id.* at 837. At this rehearing, the disciplinary committee again found Irby guilty. *Id.*

¶ 20. Rather than petitioning the circuit court for certiorari review of the second disciplinary hearing, Irby initiated a 42 U.S.C. § 1983 action. *Irby*, 184 Wis. 2d at 837. His complaint accused the disciplinary committee of depriving him of constitutionally protected liberty interests without due process of law. *Id.* The circuit court granted the defendants' motion to dismiss for failure to state a claim. *Id.* We affirmed, holding that Irby was required to exhaust his administrative remedies prior to bringing a § 1983 action. *Id.*

¶ 21. Irby filed a petition for review, which the supreme court held in abeyance pending its decision in *Casteel v. Vaade*, 167 Wis. 2d 1, 481 N.W.2d 476 (1992). *Irby*, 184 Wis. 2d at 837. In *Casteel*, the supreme court concluded that plaintiffs need not exhaust their administrative remedies prior to initiating a 42 U.S.C. § 1983 action in state court. *Casteel*, 167 Wis. 2d at 17. Based on *Casteel*, the supreme court vacated our dismissal of Irby's complaint and remanded the matter back to us for further proceedings. *Irby*, 184 Wis. 2d at 837. On remand, we again affirmed the dismissal of Irby's § 1983 complaint. *Irby*, 184 Wis. 2d at 837. We concluded that Irby had not been denied due process because the actions of the disciplinary committee were random and unauthorized rule violations, and certiorari review provided Irby an adequate postdeprivation remedy. *Id.*

¶ 22. Irby appealed to the Wisconsin Supreme Court, arguing that the Wisconsin regulations governing disciplinary hearings are comparable to the regulations at issue in *Zinermon* and that the disciplinary committee's conduct was not random and unauthorized. *Irby*, 184 Wis. 2d at 845. The supreme court disagreed, explaining that "[u]nlike the broad delegation of discretion apparent in *Zinermon*, the DOC

regulations in this case severely limit the discretionary authority of prison officials. Those regulations explicitly and at great length spell out the procedures inmates *must* be afforded with respect to disciplinary hearings." *Irby*, 184 Wis. 2d at 845. The supreme court then listed several examples of the procedures required: "For instance, inmates must be given notice of the hearing's time, the nature of the charges against them, and the penalties they face." *Id.* (footnotes omitted). The court said—unlike in *Zinermon*, where the hospital staff, due to the overbroad grant of discretion, had authority to act unconstitutionally—that here the prison officials, under the DOC regulations, were given no such authority. *Irby*, 184 Wis. 2d at 846. Thus, the court held that the prison staff's actions qualified as random and unauthorized. *Id.* at 846–47. Finally, the court held that because the state had provided adequate postdeprivation remedies, under *Parratt* and its progeny, Irby received the process he was due. *Irby*, 184 Wis. 2d at 851.

¶ 23. Collins, like Irby, argues that her case is comparable to *Zinermon* and unlike *Parratt*. She claims that the KHA and its board were "capable of providing [her] a constitutionally sufficient pre-deprivation process" and thus her 42 U.S.C. § 1983 claim should be allowed. Collins, like Irby, is wrong.

¶ 24. Collins' complaint alleged that the KHA and its board "wrongly deprived" her of her right to due process "by failing to follow the Federal Regulations applicable to the Section 8 housing voucher program, and by failing to follow the procedures set forth in Wis. Stat. ch. 68 concerning administrative hearings." On appeal, Collins also asserts that the alleged deprivation is the result of established government procedure itself; Collins does not successfully develop this assertion in

810

any way. Ultimately, Collins' appeal reasserts that the KHA and its board's failure to follow government requirements is the cause of her deprivation of procedural due process. As we explain below, any failure to follow government requirements on the part of the KHA and its board were random and unauthorized acts.

¶ 25.　First, HUD regulations, similar to the regulations in *Irby*, and "[u]nlike the broad delegation of discretion apparent in *Zinermon*," do not allow discretion which could foreseeably result in constitutional violations. *See Irby*, 184 Wis. 2d at 845. HUD regulations explicitly spell out the procedures that must be afforded with respect to termination of Section 8 vouchers. For example, 24 CFR § 982.555(e)(6) states in relevant part:

> The person who conducts the hearing must issue a written decision, stating briefly the reasons for the decision. Factual determinations relating to the individual circumstances of the family shall be based on a preponderance of the evidence presented at the hearing. A copy of the hearing decision shall be furnished promptly to the family.

Collins offers zero proof that HUD's regulations allow the overbroad discretion that the Florida regulations allowed in *Zinermon*. The requirements of HUD do not vest such broad discretion to state officials that errors of the type complained of by Collins would be predictable. *See Irby*, 184 Wis. 2d at 846. Thus, any alleged actions contrary to HUD's procedural requirements were random and unauthorized. *See id.* at 846–47.

¶ 26.　Second, Collins' case is not a situation where the state has established, by act or omission, a tolerated manner or practice of denying federal constitutional or legal rights. Quite to the contrary, the state has taken care to establish a procedure to ensure that procedural due process is respected and to ensure that those whose

rights have been violated have access to a statutory procedure designed to identify and correct errors. *See* WIS. STAT. ch. 68. The legislative purpose as defined in ch. 68 "is to afford a constitutionally sufficient, fair and orderly administrative procedure and review in connection with determinations by municipal authorities which involve constitutionally protected rights of specific persons which are entitled to due process protection under the 14th amendment to the U.S. [C]onstitution." *See* WIS. STAT. § 68.001. Thus, any alleged actions contrary to the procedural requirements of ch. 68 were random and unauthorized. *See Irby*, 184 Wis. 2d at 846–47.

¶ 27. Having established that any alleged actions by the KHA and its board contrary to HUD's procedural requirements and/or the procedures set forth in WIS. STAT. ch. 68 were random and unauthorized, we look to whether the postdeprivation remedy offered by the state is adequate. *See Irby*, 184 Wis. 2d at 847. If that remedy is deemed adequate, Collins will have received the process she is due. *See id.*

¶ 28. The remedy offered to Collins by the state was certiorari review. *See* WIS. STAT. § 68.13. Determination of the adequacy of certiorari review as a postdeprivation remedy was recently examined by our supreme court in *Thorp v. Town of Lebanon*, 2000 WI 60, 235 Wis. 2d 610, 612 N.W.2d 59. In *Thorp*, landowners brought a 42 U.S.C. § 1983 action claiming a due process violation based on an alleged denial of their right to a fair and impartial hearing. *Thorp*, 235 Wis. 2d 610, ¶¶ 20–21, 55. The landowners did not first seek certiorari review under § 68.13. *Thorp*, 235 Wis. 2d 610, ¶ 55. In affirming our dismissal of the landowners' claims of deprivation of procedural due process, the supreme court held that the landowners had failed to exhaust their administrative remedies and further

noted that Wisconsin provides an adequate postdeprivation remedy in the form of certiorari under § 68.13. *Thorp*, 235 Wis. 2d 610, ¶¶ 54–56, 58.

¶ 29.   Despite this holding, Collins argues that litigants are not required to exhaust state judicial remedies such as certiorari prior to commencing an action under 42 U.S.C. § 1983. Collins relies on *Hanlon v. Town of Milton*, 2000 WI 61, 235 Wis. 2d 597, 612 N.W.2d 44, for her argument that, because certiorari and a § 1983 action are not mutually exclusive and are independent remedies, she can file a § 1983 denial of due process claim without first seeking redress through the state-provided process of certiorari.

¶ 30.   In *Hanlon*, James Hanlon sought a conditional use permit from the town of Milton planning and zoning committee. *Hanlon*, 235 Wis. 2d 597, ¶ 5. Hanlon wanted to operate a gravel quarry on his agricultural property. *Id.* After exhausting his state remedies and still being denied a permit, Hanlon brought an action in federal district court under 42 U.S.C. § 1983, alleging that the Town deprived him of his constitutional rights to due process and equal protection of the law by denying his conditional use permit application. *Hanlon*, 235 Wis. 2d 597, ¶¶ 6–11. The Town moved for summary judgment, which was granted. *Id.*, ¶ 11. Hanlon appealed. *Id.* Subsequently, the United States Court of Appeals for the Seventh Circuit certified the issue to the Wisconsin Supreme Court. *Id.*

¶ 31.   The supreme court defined the "narrow" issue as:   "[W]hen a municipal administrative determination gives rise to an equal protection claim for money damages actionable under [42 U.S.C.] § 1983, must this equal protection claim be brought and heard [within] a WIS. STAT. § 68.13 certiorari proceeding brought by the litigant?" *Hanlon,* 235 Wis. 2d 597, ¶ 12.

¶ 32. Plainly, *Hanlon* is not on point. First, unlike Collins, Hanlon *exhausted* his state-provided remedy by bringing his certiorari writs before he turned to a 42 U.S.C. § 1983 action. Second, unlike Collins, Hanlon brought an action under § 1983, alleging deprivation of not only procedural due process, but equal protection. Third, and significantly, the supreme court framed the issue narrowly around the equal protection claim—the clear constitutional tort claim for damages. The supreme court's holding that Hanlon was not required to assert his equal protection claim for money damages actionable under § 1983 within his WIS. STAT. ch. 68 proceeding does not advance Collins' position. As is her reliance on *Zinermon,* Collins' reliance on *Hanlon* is misplaced and we need not discuss it further.

¶ 33. Despite being provided with an adequate remedy to correct any alleged violations of her procedural due process rights, Collins did not pursue the remedy. *See* WIS. STAT. § 68.13(1); *see also Thorp,* 235 Wis. 2d 610, ¶ 54; *see also Sills v. Walworth County Land Mgmt. Comm.,* 2002 WI App 111, ¶ 41, 254 Wis. 2d 538, 648 N.W.2d 878. When the remedy of certiorari review is made available, as it was here, the requirement for procedural due process is satisfied and no actionable claim exists. *See Thorp,* 235 Wis. 2d 610, ¶¶ 53–54; *see also Irby,* 184 Wis. 2d at 843. Thus, Collins does not have an actionable 42 U.S.C. § 1983 claim for relief under the procedural due process clause.

*By the Court.*—Order affirmed.