PER CURIAM.
¶1 Charles Rayford received housing assistance benefits through a federal program administered by the Community Development Authority of the City of Madison (CDA). Because of a program rule violation by Rayford, the CDA notified Rayford that his benefits would be terminated. Rayford appealed that decision, and a hearing officer upheld the CDA's decision to terminate Rayford's benefits. Rayford brought a certiorari action in circuit court, and the court remanded for a second hearing. Upon remand, the hearing officer again upheld the CDA's decision to terminate Rayford's benefits. Rayford filed a second certiorari action, and the circuit court again remanded the matter. This time a different hearing officer reversed the CDA's termination decision and ordered that Rayford's benefits be commenced again.
¶2 Having ultimately prevailed in obtaining reinstatement of his benefits, Rayford initiated, pursuant to 42 U.S.C. § 1983, this action in the Dane County Circuit Court for damages related to the loss of his housing assistance benefits for a portion of the time he was denied benefits. The parties filed cross-motions for summary judgment. The circuit court granted summary judgment in favor of the CDA and dismissed Rayford's claims. Rayford appeals. We affirm the order of the circuit court and conclude that the CDA did not violate Rayford's constitutional rights because: (1) we reject Rayford's argument that the actions of the CDA were not random and unauthorized; and (2) Rayford had available to him an adequate post-deprivation remedy of certiorari review in state court.
BACKGROUND
¶3 There is no material dispute as to the following facts.
¶4 The CDA is a body politic authorized to operate and administer a federal low-income housing program commonly known as the "Section 8 Program." Rayford has been a participant in that program.
¶5 In 2013, the CDA notified Rayford that he would be terminated from the Section 8 Program for violating a program rule, the details of which are not pertinent to this appeal. Rayford exercised appeal rights available to him, and an "informal hearing" was held before a hearing officer designated by the CDA. At that hearing, Rayford challenged the CDA's decision that, because of the rule violation, he should be terminated from the Section 8 Program. More particularly, Rayford argued to the hearing officer that termination of his benefits was disproportionate to the rule violation because of mitigating factors noted in 24 C.F.R. § 982.552(c)(2)(i) (2018).[1] The hearing officer issued a written decision upholding the CDA's decision to terminate Rayford's Section 8 benefits.
¶6 Rayford filed a certiorari action against the CDA to challenge the hearing officer's decision. Judge Peter Anderson[2] agreed with Rayford that the hearing officer was required, pursuant to 24 C.F.R. § 982.552(c)(2)(i), to consider the mitigating factors set forth in that regulation. Judge Anderson also concluded that the hearing officer's written decision did not adequately consider the mitigating circumstances set forth in that regulation and remanded the matter to the CDA for the hearing officer to issue another decision after considering those mitigating circumstances noted in the federal regulation.
¶7 On remand, the hearing officer issued a second written decision and again upheld the CDA's decision to terminate Rayford's Section 8 benefits. The hearing officer stated in her second decision that it was her understanding that it was not the hearing officer but the CDA that is responsible, in its initial decision to terminate Rayford's benefits, for weighing the relevant mitigating factors under 24 C.F.R. § 982.552(c)(2)(i).
¶8 Rayford commenced a second certiorari action against the CDA. In that action, Rayford sought reversal of the hearing officer's second decision arguing that the hearing officer did not comply with the previous order from Judge Anderson and the requirements of 24 C.F.R. § 982.552(c)(2)(i). Judge Anderson agreed with Rayford, vacated the hearing officer's second decision, and ordered the CDA to appoint another hearing officer for Rayford's case. Judge Anderson further ordered that, in "making a new written decision on whether [Rayford] should be terminated, the [CDA]'s new hearing officer shall independently consider all of the factors set forth in 24 C.F.R. § 982.552(c)(2)(i)."
¶9 The new hearing officer issued a decision concluding that "[u]nder all of the circumstances, Mr. Rayford's failure to [comply with program rules] does not warrant termination of his participation in the Section 8 housing assistance program." As a result of that decision, the CDA restarted Rayford's Section 8 benefits.
¶10 Rayford commenced this action against the CDA pursuant to 42 U.S.C. § 1983 (2012),[3] seeking damages related to the loss of his Section 8 benefits.[4] More specifically, the complaint alleges, and Rayford in briefing in this court contends, that the CDA's second decision (which occurred after the remand from the first certiorari action) deprived Rayford of his due process rights.
¶11 Based on competing summary judgment motions, Judge Genovese concluded that Rayford's right to due process was not violated because: (1) the acts of the hearing officer were random and unauthorized; and (2) Rayford had an adequate post-deprivation remedy of certiorari review in the state court. Rayford now appeals.
¶12 We will mention other pertinent facts in the discussion that follows.
DISCUSSION
I. Summary Judgment and Standard of Review.
¶13 Summary judgment must be granted when there is no genuine issue of material fact and a party is entitled to judgment as a matter of law. WIS. STAT . § 802.08(2) (2017-18).[5] "We review de novo the grant or denial of summary judgment and apply the same methodology and standards as the circuit court." Town of Grant v. Portage Cty. , 2017 WI App 69, ¶8, 378 Wis. 2d 289, 903 N.W.2d 152. Here, because there are no disputed material facts, we must determine which party is entitled to judgment as a matter of law. Sec. 802.08(2) ; Town of Grant , 378 Wis. 2d 289, ¶12.
II. Preliminary Matters.
¶14 Rayford contends, and Judge Anderson determined in each of the two certiorari actions, that pursuant to 24 C.F.R. § 982.552(c)(2)(i) a hearing officer is required to apply the mitigating factors mentioned in that regulation without deference to the application, if any, of those factors in the CDA's initial determination to terminate Rayford's benefits. The CDA maintains that Judge Genovese interpreted that regulation in the same manner in this action. The CDA argues that the determinations by Judge Anderson and Judge Genovese are incorrect and, for that reason, Rayford's cause of action fails. Because we resolve this appeal on other grounds, we assume without deciding that Rayford is correct that a hearing officer is required to apply the mitigating factors mentioned in § 982.552(c)(2)(i) without deference to the application, if any, of those same factors in the CDA's initial determination to terminate Rayford's benefits.
¶15 The CDA advances other arguments that we need not reach because we resolve this appeal on other grounds. Those arguments can be summarized as follows.
¶16 The CDA asserts that 24 C.F.R. § 982.552(c)(2)(i) does not apply to actions of the hearing officer because the regulation refers only to the "PHA" rather than the hearing officer. (The parties do not dispute that, in this context, the CDA is a PHA or "public housing authority.") We will assume without deciding that the reference in the regulation to the PHA includes a hearing officer appointed by a PHA.
¶17 Next, the CDA contends that Judge Anderson's decision in the first certiorari lawsuit was confusing and, for that reason, the hearing officer was unsure what Judge Anderson ordered the hearing officer to do when the case was remanded. We assume without deciding that, in the first certiorari action, Judge Anderson's order and his directions to the hearing officer were not confusing.
¶18 The CDA further argues that, on remand after the first certiorari action, the hearing officer applied the mitigating factors in 24 C.F.R. § 982.552(c)(2)(i) and conducted, in effect, a de novo application of the factors. We assume without deciding that the hearing officer did not perform a de novo application of those mitigating factors on remand after the first certiorari action.
¶19 The CDA also asserts that it is not legally responsible for the hearing officer's actions. We will assume, without deciding, that there is no material distinction for purposes of our analysis between the hearing officer and the CDA, and the CDA may be legally responsible for the hearing officer's actions.
III. Procedural Due Process Claims Under 42 U.S.C. § 1983.
¶20 A claim made pursuant to 42 U.S.C. § 1983 based on the due process clause of the Fourteenth Amendment to the United States Constitution requires a plaintiff to prove that he or she was "deprived of a constitutionally protected interest in life, liberty or property without due process of law." Jones v. Dane Cty. , 195 Wis. 2d 892, 913, 537 N.W.2d 74 (Ct. App. 1995). For such claims, a court must determine: (1) whether the conduct complained of was committed by a person acting under color of state law; (2) whether that conduct deprived the plaintiff of a constitutionally protected interest; and (3) whether the alleged deprivation occurred without due process of law. Easter House v. Felder , 910 F.2d 1387, 1394 (7th Cir. 1990) (citing Parratt v. Taylor , 451 U.S. 527, 535 (1981) ). The parties agree that, for purposes of summary judgment, Rayford has satisfied the first two elements. Our analysis will focus on whether the deprivation of Rayford's property interest in his benefits occurred without due process of law.
¶21 "The [procedural component of the] Due Process Clause does not prevent states from depriving persons of their life, liberty or property." Jones , 195 Wis. 2d at 914 (alteration in original) (quoting Irby v. Macht , 184 Wis. 2d 831, 842, 522 N.W.2d 9 (1994) ). "In procedural due process claims ... what is unconstitutional is the deprivation of such a[ ] [right] without due process of law." Zinermon v. Burch , 494 U.S. 113, 125 (1990).
¶22 Generally, the due process clause requires a hearing before a deprivation occurs. Irby , 184 Wis. 2d at 843. "But, when a deprivation of a right has resulted from a random and unauthorized act ... providing meaningful predeprivation process is impracticable because the state cannot predict or anticipate when such acts will occur." Jones , 195 Wis. 2d at 915 (footnote omitted). So, in certain factual circumstances, the State "cannot be required constitutionally to do the impossible by providing predeprivation process." Zinermon , 494 U.S. at 129. "In such cases, due process is satisfied when the state makes available adequate postdeprivation remedies." Jones , 195 Wis. 2d at 915.
¶23 For those reasons, our supreme court has held that "the existence of postdeprivation process defeated the constitutional [procedural due process] claim when a state employee's actions were random and unauthorized." See id. at 918 n.8.[6]
IV. Rayford's Procedural Due Process Claim.
¶24 Rayford argues that he suffered a deprivation without due process. More specifically, Rayford contends that the deprivation was the second decision of the hearing officer to affirm Rayford's termination of his housing program benefits. Rayford contends that the lack of due process emanates from the failure of the hearing officer to abide by Judge Anderson's directive that the hearing examiner consider mitigating factors. Under the due process principles we have set forth above, for Rayford to succeed this failure of the hearing officer to abide by Judge Anderson's directive must not be random and unauthorized, and the post-deprivation remedy of certiorari review must be inadequate.
¶25 The CDA argues that Rayford's due process rights were not violated because: (1) the CDA's activities complained of were random and unauthorized; and (2) the availability of certiorari review in state court was a sufficient post-deprivation remedy for Rayford. We discuss, first, whether the CDA's actions were random and unauthorized and then consider whether certiorari review was an adequate post-deprivation remedy.
V. Random and Unauthorized.
¶26 A loss of a property interest "as a result of a random and unauthorized act by a state employee," which by definition is not a loss resulting from an "established state procedure," is beyond the state's control and cannot be predicted. Parratt , 451 U.S. at 541.[7] This court has held that conduct performed in conformity with established state procedures is not random and unauthorized. Jones , 195 Wis. 2d at 915 n.7 (citing Hudson v. Palmer , 468 U.S. 517, 532 (1984) ).
¶27 An act of a state employee is random if it was "impossible for the state to predict the action." Id. at 916. Also, "[t]he question of 'predictability'-i.e., the question of whether a state actor's conduct can be deemed 'random' from the point of view of the state-does not turn simply on whether that official exercises a certain degree of discretion." Easter House , 910 F.2d at 1400. Rather, here, "predictability" focuses on the extent to which the state official's discretion is "uncircumscribed." Id. An official may exercise the discretion to effect a deprivation, but if that discretion is "circumscribed" by statutory or other predeprivation procedural safeguards, "an abuse of that discretion, while possibly causing a deprivation of property, would not necessarily be 'predictable' from the point of view of the state and, according to Parratt and Zinermon , not compensable under § 1983." Id.
¶28 On the question of authorization, the applicable regulations are considered in determining whether an act is "authorized" in the sense the term is used in Parratt and Hudson . Collins v. City of Kenosha Hous. Auth. , 2010 WI App 110, ¶¶16-17, 22, 328 Wis. 2d 798, 789 N.W.2d 342 (citing Zinermon , 494 U.S. at 138 ; Irby , 184 Wis. 2d at 846 ).
A. Whether the Hearing Officer's Action Was Random.
¶29 As discussed, whether an action is random is determined with respect to whether the action was predictable. Easter House , 910 F.2d at 1400. Rayford's predictability argument has two related parts. Rayford asserts that his case is "one where the loss was the ... result of some 'established State procedure' [CDA's post-remand duty] and the CDA could 'predict precisely when the loss will occur' by the CDA's hearing officer's disobedience of the court order."
¶30 Rayford's predictability argument fails. Rayford points to no regulation (or policy) of the CDA that meets the definition of "established state procedure" that caused Rayford's loss. In other words, Rayford points to no established procedure in the form of a regulation that calls for a hearing officer not to follow a court order. See id. ; Collins , 328 Wis. 2d 798, ¶¶16-17, 22. Further, Rayford points to nothing that would make it predictable that the hearing officer would not obey Judge Anderson's order from the first certiorari action. Rather, Rayford focuses on the result he complains of, namely, the second decision of the hearing officer. Causation of his purported loss by the hearing officer's second decision does not lead to the conclusion that the hearing officer's second decision was predictable or authorized.
B. Whether the Hearing Officer's Failure Was Authorized.
¶31 As best we can tell, Rayford argues that the second hearing officer decision was "authorized" because the CDA supervisor understood Judge Anderson's decision but did not reverse the hearing officer's decision. Although the CDA supervisor has the authority to reverse a hearing officer's decision which is "[c]ontrary to HUD regulations or requirements, or otherwise contrary to federal, State, or local law" under 24 C.F.R. § 982.555(f)(2), the supervisor did not reverse either of the first two hearing officer decisions concerning Rayford. We reject this argument because there is no basis to conclude that the authorized status of an action depends on a later decision not to reverse that action. Regardless, we reject this argument for lack of legal support. Rayford fails to provide any support for the proposition that the term "authorized," as used in the due process context, applies to the failure of the supervisor to change the hearing officer's second order.
¶32 Moreover, determining whether a hearing officer's actions are "authorized" in this context is a matter of looking to applicable federal regulations. See Collins , 328 Wis. 2d 798, ¶¶16-17, 22. On that topic, Rayford has agreed that the federal regulations did not authorize the hearing officer's second decision.
¶33 Therefore, we reject Rayford's argument that the CDA's complained-of conduct was not "random and unauthorized."
VI. Adequate Post-Deprivation Remedy.
¶34 We now consider whether the post-deprivation remedy of certiorari review is adequate. See Irby , 184 Wis. 2d at 847.[8] If that remedy is deemed adequate, then Rayford has received the process he is due, and his § 1983 claim must be dismissed. Collins , 328 Wis. 2d 798, ¶¶22, 27 (citing Irby , 184 Wis. 2d at 847 ).
¶35 Wisconsin courts have held that certiorari review is an adequate post-deprivation remedy. See, e.g. , Irby , 184 Wis. 2d at 847-51 ; Collins , 328 Wis. 2d 798, ¶33 ("When the remedy of certiorari review is made available , as it was here, the requirement for procedural due process is satisfied and no actionable claim exists." (emphasis added) ); Thorp v. Town of Lebanon , 2000 WI 60, ¶54, 235 Wis. 2d 610, 612 N.W.2d 59. Post-deprivation remedies are deemed adequate "unless they can 'readily be characterized as inadequate to the point that [they are] meaningless or nonexistent ....' " Irby , 184 Wis. 2d at 847 (quoting Scott v. McCaughtry , 810 F. Supp. 1015, 1019 (E.D. Wis. 1992) ); Jones , 195 Wis. 2d at 917-18.
¶36 Rayford argues that certiorari review was a meaningless or nonexistent remedy for him. Specifically, Rayford contends that, because the hearing officer did not follow Judge Anderson's order from the first certiorari action, there was a "defect ... in the established state procedure" which in turn "destroyed" Rayford's due process rights. Regardless of the conclusory labels in Rayford's argument, we determine that, under any applicable definitions of the words "meaningless" or "nonexistent," certiorari review as applied here cannot be readily characterized as either meaningless or nonexistent. Plainly, the process afforded Rayford existed and was not meaningless because he ultimately obtained the restoration of his benefits. To determine whether a remedy is meaningless or nonexistent requires consideration of the totality of the circumstances not, as Rayford asserts, viewing only part of the process in isolation.[9]
¶37 The facts and holding in Irby confirm that Rayford's argument must be rejected. Irby was charged with prison rules violations. Irby , 184 Wis. 2d at 836. Irby demanded a disciplinary committee hearing at which he was found to have violated various rules. Irby challenged the result in a certiorari lawsuit and prevailed in the circuit court because the committee failed to follow administrative regulations applicable to the hearing. Id. at 836-37. The matter was remanded to the disciplinary committee which held a second hearing, and Irby again lost. Id. Rather than petitioning a second time for certiorari review in the circuit court, Irby initiated a § 1983 action alleging that his due process rights were violated, and Irby requested relief which included money damages for the alleged violations. Id. Our supreme court held:
When the [committee] allegedly failed a second time to follow the mandated procedural rules, Irby once again had the option of challenging its decision with a petition for certiorari review. The fact that Irby chose not to petition for certiorari review does not, in our opinion, indicate that option's inadequacy .
Id. at 849 (emphasis added).
¶38 The parallels between pertinent facts in Irby and this case, and the holding in Irby , confirm our conclusion that certiorari review was an adequate post-deprivation remedy for Rayford. After the CDA's initial determination to terminate his benefits, Rayford requested an "informal hearing" before a hearing officer. Rayford lost at that hearing, filed his first certiorari action, and prevailed in the circuit court. After remand, the hearing officer issued a second decision, and Rayford again lost. Rayford contends that, at the point of the hearing officer's second decision, his due process rights were violated because the need to file a second certiorari lawsuit caused certiorari review to be an inadequate remedy. However, as quoted, Irby holds that when persons in the position of Irby and Rayford must petition for certiorari review a second time because an agency has again erred, that does not cause certiorari review to be an inadequate remedy for due process purposes. See id. at 850-51 (money damages are not available with certiorari review, but that does not make certiorari review a meaningless remedy "simply because [it does] not afford [plaintiffs] an opportunity to receive money damages").
¶39 In sum, we conclude that certiorari review was not an inadequate state remedy available to Rayford and, because we reject Rayford's argument that the CDA's actions were not random and unauthorized, Rayford's constitutional rights were not violated by the CDA.
VII. Custom or Policy.
¶40 Finally, Rayford argues that his due process rights were violated solely because of an alleged "custom or policy" of the CDA. According to Rayford, an example of a custom or policy violated was the CDA supervisor's custom of not reviewing hearing officer decisions on benefits termination. However, in a § 1983 action alleging a violation of due process rights by a municipality, the municipality is not liable until, first, it is demonstrated that there is a due process constitutional violation. The municipality is liable only if it is then determined that a custom or policy of the municipality approved or allowed the constitutional violation. See, e.g. , Monell v. Department of Soc. Servs. of New York , 436 U.S. 658, 694 (1978) ; Los Angeles Cty. v. Humphries , 562 U.S. 29, 36 (2010) ; Sallenger v. City of Springfield , 630 F.3d 499, 504-05 (7th Cir. 2010) ; Petty v. City of Chicago , 754 F.3d 416, 424 (7th Cir. 2014) ("To establish ... liability ... it is not enough for Petty to allege that [the agency's] alleged policy injured him. Rather, he must establish: (1) that he suffered a constitutional injury, and (2) that the City authorized or maintained a custom of approving the unconstitutional conduct."). Because we have concluded that Rayford failed to demonstrate that he suffered a constitutional violation, we need not address Rayford's arguments regarding a purported custom or policy of the CDA.
CONCLUSION
¶41 For those reasons, we affirm the circuit court's grant of summary judgment in favor of the Community Development Authority of the City of Madison dismissing Rayford's claims.
By the Court. -Judgment affirmed.
This opinion will not be published. See WIS. STAT. RULE 809.23(1)(b)5.

24 C.F.R. § 982.552(c)(2)(i) states that a public housing authority such as the CDA "may consider all relevant circumstances" in determining whether to terminate assistance, including the following: "the seriousness of the case, the extent of participation or culpability of individual family members, mitigating circumstances related to the disability of a family member, and the effects of denial or termination of assistance on other family members who were not involved in the action or failure." All citations to the Code of Federal Regulations are to the 2018 version unless otherwise noted.

The Honorable Peter Anderson presided over the two certiorari actions initiated by Rayford. The Honorable Julie Genovese presided over this case. For clarity, we will refer to each circuit court judge by name.

All citations to the United States Code are to the 2012 version unless otherwise noted.

The parties do not dispute that, pursuant to federal law, Rayford's Section 8 housing benefits could not be restored retroactively to the date of the CDA's initial decision to terminate his benefits. Although Rayford does not directly seek retroactive benefits, the damages he seeks in this action would, effectively, include compensation for the loss of benefits for a portion of the time Rayford was denied benefits by the CDA.

All references to the Wisconsin Statutes are to the 2017-18 version unless otherwise noted.

This holding applies to deprivations of either liberty or property rights. Jones v. Dane Cty. , 195 Wis. 2d 892, 915 n.6, 537 N.W.2d 74 (Ct. App. 1995) (citing Zinermon v. Burch , 494 U.S. 113, 132 (1990) ).

The underlying rationale of Parratt v. Taylor , 451 U.S. 527 (1981), applies to the random and unauthorized negligent or intentional conduct of its employees. Collins v. City of Kenosha Hous. Auth. , 2010 WI App 110, ¶9, 328 Wis. 2d 798, 789 N.W.2d 342 (citing Hudson v. Palmer , 468 U.S. 517, 533 (1984) ).
Authorities which refer to the "state" are applicable in these circumstances because the CDA has agreed it was acting under color of state law. See ¶20, above.

This court previously concluded that Irby v. Macht , 184 Wis. 2d 831, 522 N.W.2d 9 (1994), is still precedential in spite of the United States Supreme Court's decision in Sandin v. Conner , 515 U.S. 472 (1995). "The subsequent analysis in Irby , in which the court concluded that Irby had received all of the process he was due because of the availability of adequate postdeprivation state law remedies coupled with random and unauthorized acts, has not been and need not be jettisoned." Jones , 195 Wis. 2d at 916.

Notably, Rayford does not focus on the proposition that the certiorari proceedings were meaningless with respect to his ability to obtain a remedy for any portion of the time he was denied benefits. Accordingly, Rayford provides no developed argument on this topic. Still, we observe that any argument along this line would likely fail. We do not decide the issue, but we note that a state remedy need not afford the opportunity to receive damages to be "adequate" under 42 U.S.C. § 1983. See Lewis v. Sullivan , 188 Wis. 2d 157, 170, 524 N.W.2d 630 (1994) (citing Irby , 184 Wis. 2d at 850 ). Also, that an injured party "might not be able to recover under [the state law] remedies the full amount which he might receive in a § 1983 action is not ... determinative of the adequacy of the state remedies." Hudson , 468 U.S. at 535 (citing Parratt , 451 U.S. at 544 ); Easter House v. Felder , 910 F.2d 1387, 1406 (7th Cir. 1990).